USCA1 Opinion

 

 April 15, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  _________________________ No. 95-2129 TROY E. BROOKS, Plaintiff, Appellant, v. NEW HAMPSHIRE SUPREME COURT, ET AL., Defendants, Appellees   __________________________ ERRATA SHEET ERRATA SHEET The opinion of the court issued on April 8, 1996, is corrected as follows: Replace footnote 4, page 6, to read in its entirety as follows: Although several courts have applied an abuse of discretion standard in reviewing Younger abstention _______ cases, see, e.g., Martin Marietta Corp. v. Maryland ___ ____ ______________________ ________ Human Relations Comm'n, 38 F.3d 1392, 1396 (4th Cir. _______________________ 1994); O'Neil v. City of Philadelphia, 32 F.3d 785, 790 ______ ____________________ (3d Cir. 1994), cert. denied, 115 S. Ct. 1355 (1995); _____ ______ Ramos v. Lamm, 639 F.2d 559, 564 n.4 (10th Cir. 1980), _____ ____ cert. denied, 450 U.S. 1041 (1981), context is the _____ ______ determining factor. Where an attempt is made to apply the Younger doctrine under oddly configured _______ circumstances, in a way that threatens the legitimate interests of the national government, then the federal court may exercise a modicum of discretion, and appellate review is for abuse of that discretion. See ___ Chaulk Servs., Inc. v. MCAD, 70 F.3d 1361, 1368 (1st ___________________ ____ Cir. 1995). But for purposes of what the Chaulk ______ majority called the "customary case" of which the case at bar is a prototype the Supreme Court has spoken peremptorily, see Colorado River, 424 U.S. at ___ ______________ 816 n.22, and intermediate appellate courts are, therefore, spinning wheels by probing for abuse of a discretion that does not exist. Nonetheless, the district court's findings of fact, in contradistinction to its ultimate legal conclusion as to the applicability vel non of the Younger doctrine, may ___ ___ _______ evoke a more deferential standard of review. UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-2129 TROY E. BROOKS, Plaintiff, Appellant, v. NEW HAMPSHIRE SUPREME COURT, ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Philip T. Cobbin for appellant. ________________ Stephen J. Judge, Senior Assistant Attorney General, with ________________ whom Jeffrey R. Howard, Attorney General, was on brief, for __________________ appellees. _________________________ April 8, 1996 _________________________ SELYA, Circuit Judge. Balancing responsibility between SELYA, Circuit Judge. _____________ federal and state governments in a republic that assigns interlocking sovereignty to each often requires federal courts to walk an unsteady tightrope. From a federal court's perspective, this special sort of judicial funambulism always must proceed in the spirit of cooperative federalism tempered, however, by the need to avoid the pitfalls inherent in blind deference to state autonomy. The case at hand implicates the division of responsibilities between federal and state judicial systems but does not require us to walk a very high wire. We need only tread on solid ground, previously paved by the United States Supreme Court, and apply the Court's teachings to the peculiar factual and legal terrain that underlies this appeal. Because that exercise persuades us that the district court performed its task in step with the principles enunciated by the Court, we affirm the order from which the plaintiff appeals. I. BACKGROUND I. BACKGROUND We supply a thumbnail sketch of the relevant facts. In 1992, plaintiff-appellant Troy E. Brooks and Erica Bodwell, a member of the New Hampshire bar, engaged in an intimate relationship during a period when Bodwell was separated from her husband. Bodwell became pregnant. She obtained a divorce in late 1992, but the final decree made no provision for her unborn child. Bodwell gave birth to a son in February of 1993 and 3 subsequently initiated a paternity suit against Brooks in which she maintained that he was the boy's biological father. Brooks acknowledged paternity and the court entered a provisional order covering matters such as support, custody, and visitation. Shortly thereafter, Bodwell reconciled with her ex- husband, moved to discontinue the paternity action, and, relying on the fact that the child was conceived while she was still married, sought refuge in the presumption of legitimacy. Brooks objected to the proposed dismissal of the paternity suit and set out to confirm his legal status as the boy's father. After numerous skirmishes concerning paternity (not relevant here), Brooks filed complaints with the New Hampshire Supreme Court Professional Conduct Committee (the Committee) against three attorneys, including Erica Bodwell, accusing them of flouting various ethical canons in their handling of the paternity suit. The Committee dismissed the complaints after conducting an investigation. Brooks then sought to put to use in the paternity suit both the fact that a disciplinary complaint had been instituted against Erica Bodwell and certain evidence to which he became privy during the course of the Committee's investigation. His efforts were thwarted by a rule prohibiting the disclosure of knowledge obtained during the course of attorney disciplinary proceedings. See N.H. Sup. Ct. R. 37(17)(a) (1984).1 Brooks ___  ____________________ 1The rule in effect at the time, with exceptions not relevant here, provided that all records and proceedings involving allegations of attorney misconduct "shall be 4 retorted by filing a pro se petition in the New Hampshire Supreme ___ __ Court (the NHSC) in which he contended that Rule 37(17)(a) abridged his First Amendment right to free speech and asked that the rule be invalidated. On March 23, 1995, the NHSC agreed to entertain Brooks' petition. The court scheduled briefing and oral argument (with the proviso that all matters connected with the proceeding remain confidential). Brooks then retained counsel, Philip Cobbin, who filed a brief on his behalf. The court accepted the case on a paper record once Brooks and his attorney refused to participate in oral arguments behind closed doors. The case has yet to be decided.  After the matter had been taken under advisement, Brooks, acting as his own attorney, sued the members of the NHSC and of the Committee (and others, for good measure, including the state bar association) in New Hampshire's federal district court. His complaint sought declaratory and injunctive relief aimed at halting the enforcement of Rule 37(17)(a). In what amounted to anticipatory disregard of that rule, he attached a copy of the NHSC's order (agreeing to entertain his petition, but only in camera) to his federal court complaint. Attorney Cobbin subsequently entered an appearance for Brooks in the federal  ____________________ confidential and shall not be disclosed." N.H. Sup. Ct. R. 37(17)(a). The same rule also provided that "participants in the proceedings shall conduct themselves so as to maintain the confidentiality mandated by this rule," and warned that "[v]iolation of this duty shall constitute an act of contempt of the supreme court." N.H. Sup. Ct. R. 37 (17)(g). 5 court and moved for a preliminary injunction designed (a) to freeze the paternity suit until the federal court had ruled on Brooks' constitutional claim, (b) to force the NHSC to dismiss Brooks' petition without prejudice, and (c) to prevent that court from exercising its contempt powers under Rule 37(17)(g) against Brooks. Without requesting the district court to seal the record, Attorney Cobbin included in the motion a copy of a brief filed in the confidential proceeding. Not surprisingly, the NHSC promptly directed the Committee to determine whether the lawyer had violated Rule 37(17)(a). The district court refused to issue a preliminary injunction. The court reasoned that the proceeding pending in the NHSC called into play the doctrine of Younger v. Harris, 401 _______ ______ U.S. 37 (1971); that Brooks' claim implicated an important state interest, namely, the administration of the attorney disciplinary system; that Brooks could obtain a full and fair hearing on his federal constitutional claim before the state tribunal; and that, therefore, the Younger doctrine disabled the district court from _______ granting the requested relief. This appeal ensued.2 II. STANDARD OF REVIEW II. STANDARD OF REVIEW Technically, this is an appeal from the denial of a  ____________________ 2Following oral argument on this appeal, the NHSC substantially revised Rule 37(17). See N.H. Sup. Ct., Order of ___ March 7, 1996 & appendices. The amendments take some steps toward meeting Brooks' objections by relaxing the confidentiality restrictions applicable to attorney disciplinary proceedings. But because the amendments are without retroactive effect the Order specifically provides that the amendments shall be effective as to complaints filed on or after March 7, 1996 they have no significant impact on this appeal. 6 preliminary injunction,3 and therefore the lower court's decision assuming that it applied the appropriate legal standard ordinarily must stand unless the appellant demonstrates an abuse of discretion. See, e.g., Weaver v. ___ ____ ______ Henderson, 984 F.2d 11, 12-13 (1st Cir. 1993). If Younger _________ _______ applies, however, abstention is mandatory, see Colorado River ___ _______________ Water Conserv. Dist. v. United States, 424 U.S. 800, 816 n.22 ____________________ ______________ (1976); Trust & Investment Advisers, Inc. v. Hogsett, 43 F.3d ___________________________________ _______ 290, 293-94 (7th Cir. 1994); Fresh Int'l Corp. v. Agricultural _________________ ____________ Labor Relations Bd., 805 F.2d 1353, 1356 n.2 (9th Cir. 1986), and ___________________ we must review de novo the essentially legal determination of whether the requirements for abstention have been met. See, ___ e.g., Trust & Investment Advisers, 43 F.3d at 294; Kenneally v. ____ ____________________________ _________ Lungren, 967 F.2d 329, 331 (9th Cir. 1992), cert. denied, 506 _______ _____ ______ U.S. 1054 (1993); Traughber v. Beauchane, 760 F.2d 673, 675-76 _________ _________ (6th Cir. 1985).4 That standard supervenes the abuse of  ____________________ 3Despite Brooks' importuning, we have no appellate jurisdiction over the district court's denial of the flurry of temporary restraining orders that he sought prior to the district court's disposition of his motion for a preliminary injunction. See United States v. Miller, 14 F.3d 761, 764 (2d Cir. 1994); ___ _____________ ______ Massachusetts Air Pollution & Noise Abatement Comm'n v. Brinegar, ____________________________________________________ ________ 499 F.2d 125, 125 (1st Cir. 1974). 4 Although several courts have applied an abuse of discretion standard in reviewing Younger abstention _______ cases, see, e.g., Martin Marietta Corp. v. Maryland ___ ____ ______________________ ________ Human Relations Comm'n, 38 F.3d 1392, 1396 (4th Cir. _______________________ 1994); O'Neil v. City of Philadelphia, 32 F.3d 785, 790 ______ ____________________ (3d Cir. 1994), cert. denied, 115 S. Ct. 1355 (1995); _____ ______ Ramos v. Lamm, 639 F.2d 559, 564 n.4 (10th Cir. 1980), _____ ____ cert. denied, 450 U.S. 1041 (1981), context is the _____ ______ determining factor. Where an attempt is made to apply the Younger doctrine under oddly configured _______ circumstances, in a way that threatens the legitimate 7 discretion inquiry, and applies foursquare even though we are reviewing the district court's denial of injunctive relief. See ___ Fieger v. Thomas, 74 F.3d 740, 743 (6th Cir. 1996) (exercising de ______ ______ novo review in kindred circumstances); Goldie's Bookstore, Inc. ________________________ v. Superior Court, 739 F.2d 466, 468 (9th Cir. 1984) (similar). ______________ This usurpation of the customary standard of review does not create an awkward anomaly. The primary integer in the preliminary injunction calculus is the plaintiff's probability of success on the merits. See, e.g., Narragansett Indian Tribe v. ___ ____ __________________________ Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).5 This means, of ________ course, that the plaintiff must show a likelihood of succeeding in the pending proceeding. When Younger applies, the district __________________________ _______ court must refrain from reaching the merits of the plaintiff's claims and, thus, there is no real possibility let alone a  ____________________ interests of the national government, then the federal court may exercise a modicum of discretion, and appellate review is for abuse of that discretion. See ___ Chaulk Servs., Inc. v. MCAD, 70 F.3d 1361, 1368 (1st ___________________ ____ Cir. 1995). But for purposes of what the Chaulk ______ majority called the "customary case" of which the case at bar is a prototype the Supreme Court has spoken peremptorily, see Colorado River, 424 U.S. at ___ _______________ 816 n.22, and intermediate appellate courts are, therefore, spinning wheels by probing for abuse of a discretion that does not exist. Nonetheless, the district court's findings of fact, in contradistinction to its ultimate legal conclusion as to the applicability vel non of the Younger doctrine, may ___ ___ _______ evoke a more deferential standard of review. 5The other integers in the calculus include (1) the likelihood of irreparable injury in the absence of a preliminary injunction, (2) the relative balance of hardships if the order is issued or denied, and (3) the effect on the public interest of granting or withholding interim injunctive relief. See ___ Narragansett Indian Tribe, 934 F.2d at 5. _________________________ 8 likelihood that the plaintiff will succeed in his action. A fortiori, there can be no abuse of discretion in refusing to grant preliminary injunctive relief. III. ANALYSIS III. ANALYSIS Against this backdrop, we turn to a consideration of whether Younger abstention is appropriate in this case. Our _______ analysis unfolds in four layers. A. A. __ The Younger doctrine welds principles of federalism and _______ comity into a fulcrum that can then be used to achieve a proper balance between sensitive federal and state interests. See ___ Younger, 401 U.S. at 44. Based on these principles, the Younger _______ _______ Court articulated the federal judiciary's obligation to refrain from adjudicating the merits of federal claims where to do so would needlessly inject federal courts into ongoing state criminal prosecutions. See id. Doctrinal evolution over the ___ ___ next quarter-century brought other types of ongoing state proceedings, including civil actions and administrative adjudications, within the ambit of Younger abstention. See, _______ ___ e.g., New Orleans Public Serv., Inc. v. Council of City of New ____ _______________________________ _______________________ Orleans, 491 U.S. 350, 367-68 (1989); Ohio Civil Rights Comm'n v. _______ ________________________ Dayton Christian Sch., Inc., 477 U.S. 619, 627 (1986). ___________________________ Perhaps the most revealing elucidation of the balance that the Younger Court wished to achieve is found in Middlesex _______ _________ County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 _____________________ ________________________ (1982). There the New Jersey Ethics Committee instituted a 9 disciplinary proceeding against a defense lawyer who, during a criminal trial, had made statements vilifying the judicial system. See id. at 428. The lawyer sued in federal court to ___ ___ block the disciplinary proceeding on the ground that the standards of professional conduct relied upon by the committee abridged his First Amendment rights. The district court abstained, concluding that the lawyer could raise his claims in the disciplinary proceeding and on subsequent judicial review. The Third Circuit reversed on the basis that a bar disciplinary proceeding did not provide a suitable forum for the adjudication of the lawyer's constitutional claims. 643 F.2d 119. The Supreme Court reinstated the district court's ruling. 457 U.S. at 437. In the process the Court established the basic analytical framework that still governs Younger _______ abstention. Under this paradigm, a federal court must abstain from reaching the merits of a case over which it has jurisdiction so long as there is (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding (or, at least, instituted prior to any substantial progress in the federal proceeding), that (2) implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit. See id. at 432. ___ ___ B. B. The next step in the pavane requires us to apply this tripartite framework to the case at bar. 1. Two of the three proceedings that Brooks seeks to 1. 10 enjoin his petition questioning the constitutionality of Rule 37(17)(a) and the paternity suit in which he is embroiled are pending before duly constituted state courts and are undeniably ongoing state judicial proceedings. See New Orleans Public ___ ___________________ Serv., 491 U.S. at 371 (listing rudiments of a judicial inquiry). _____ The third proceeding the embryonic contempt proceeding against Cobbin (which Brooks, in all events, may lack standing to contest) is also judicial in nature. Middlesex itself involved _________ a First Amendment challenge to a state's system of attorney discipline, and the Supreme Court held that attorney disciplinary proceedings are judicial proceedings for purposes of Younger _______ abstention. See Middlesex, 457 U.S. at 433-34. Consequently, ___ _________ the first prerequisite for Younger abstention is satisfied. _______ 2. It is evident that New Hampshire has a vital 2. interest in regulating the subject matter of Brooks' claims. A state's judicial system is an important cog in its governmental apparatus, and no judicial system can function smoothly unless the attorneys who participate in it are held to high standards of professionalism and accountability. See id. at 434-35. Thus, ___ ___ regulating attorney conduct comprises a significant state interest for purposes of Younger abstention.6 See id.; see also _______ ___ ___ ___ ____  ____________________ 6The defendants represent the state's interest. By way of illustration, the NHSC is charged with the paramount responsibility of establishing procedures and standards governing attorney discipline "that are emblematic of the character of the profession." Petition of Burling, 651 A.2d 940, 944 (N.H. 1994); ___________________ see also N.H. Const., pt. II, art. 73-a. To achieve that mission ___ ____ the court relies upon the Committee to investigate and determine the propriety of attorneys' conduct. See N.H. Sup. Ct. R. ___ 37(3)(c); see also Burling, 651 A.2d at 941-42. ___ ____ _______ 11 Fieger, 74 F.3d at 745; Hirsh v. Justices of Calif. Supreme ______ _____ ___________________________ Court, 67 F.3d 708, 712-13 (9th Cir. 1995). _____ In the same vein, the confidentiality rule comprises a central element of the regulatory scheme. The NHSC has identified no fewer than four noteworthy purposes that the rule serves: (1) protecting attorneys' reputations; (2) protecting complainants' anonymity; (3) maintaining the integrity of pending investigations; and (4) preventing profligate disclosures that might endanger the interests of those sources from whom the state obtained information on a confidential basis. See State v. ___ _____ Merski, 437 A.2d 710, 715 (N.H. 1981), cert. denied, 455 U.S. 943 ______ _____ ______ (1982). Since the rule's proper operation is itself of great moment to New Hampshire citizens, the second requirement for Younger abstention is satisfied.7 _______ 3. We also believe that the pending state proceedings 3. allow an ample opportunity for Brooks to raise his constitutional challenge. The clearest illustration of this point is the proceeding presently pending before the NHSC (in which the very issue that forms the centerpiece of Brooks' federal complaint is raised, briefed, and teetering on the brink of decision). Any other assessment would defile the basic presumption that state courts are fully capable of safeguarding federal constitutional rights. See Middlesex, 457 U.S. at 431; Bettencourt v. Board of ___ _________ ___________ _________  ____________________ 7Although the NHSC recently amended the version of the confidentiality rule that is at issue here, see supra note 2, the ___ _____ state nevertheless retains a strong interest in preserving the expectations of confidentiality created by the former regime. 12 Registration in Medicine, 904 F.2d 772, 776 (1st Cir. 1990). ________________________ Here, the presumption is reinforced because the NHSC has demonstrated unequivocally that it takes questions anent the confidentiality provisions seriously. See, e.g., Petition of ___ ____ ____________ Burling, 651 A.2d 940 (N.H. 1994). Indeed, when Brooks _______ interposed his objections to the confidentiality rule, the NHSC  which could have brushed aside his petition as a matter of discretion elected to entertain the objections, and did so in a proceeding that affords Brooks an adequate opportunity to present his constitutional arguments. Though Brooks maintains that the NHSC proceeding is less than adequate because of its confidential character, the Supreme Court has never suggested that having an adequate opportunity to present a federal claim requires the parallel state proceeding be open to the public. Rather, the test is whether "state law clearly bars the interposition of the constitutional claims." Moore v. Sims, 442 U.S. 415, 425-26 _____ ____ (1979). Nothing in the confidential nature of the state court proceeding constitutes such a bar.8 The third (and final) requirement for Younger abstention is therefore satisfied. _______ C. C. __ Fulfillment of the three requirements for Younger _______ abstention usually ends the federal inquiry. See Bettencourt, ___ ___________  ____________________ 8For what it may be worth, we note that, if the NHSC follows past practice, its eventual disposition of Brooks' petition will be embodied in a published, publicly accessible opinion. See, ___ e.g., Petition of Burling, 651 A.2d 940 (N.H. 1994); Astles' ____ ____________________ _______ Case, 594 A.2d 167 (N.H. 1991).  ____ 13 904 F.2d at 779-80. But even if the Younger requirements are _______ satisfied, a federal court may nonetheless intervene to halt an ongoing state judicial proceeding if the plaintiff demonstrates "bad faith, harassment, or any other unusual circumstance." Younger, 401 U.S. at 54. Brooks suggests that his case trips the _______ exception. He bases this suggestion broadly, but the only point that bears extended discussion is his allegation that the state tribunal is incompetent by reason of bias. Judicial bias is a recognized basis for derailing Younger abstention, see, e.g., Gibson v. Berryhill, 411 U.S. 564, _______ ___ ____ ______ _________ 577-79 (1973), but the claim requires more than the frenzied brandishing of a cardboard sword. Brooks' claim is pasted together from various bits and pieces of marginally relevant information. For example, he notes that several Justices of the NHSC have advocated confidential treatment of judicial disciplinary proceedings; that certain Justices have testified before legislative committees in opposition to restrictions on the Chief Justice's rulemaking power; that the NHSC will only hear oral argument on his petition behind closed doors; and that in the state court proceeding the Committee has staunchly defended the validity of the confidentiality rule. We think that such snippets, individually and collectively, are insufficient to show cognizable bias. In the first place, the bias exception to the Younger _______ abstention doctrine is inapposite if an ostensibly aggrieved party fails to employ available procedures for recusal of 14 allegedly biased judges. See Middlesex, 457 U.S. at 435; ___ _________ Bettencourt, 904 F.2d at 780; Standard Alaska Prod. Co. v. ___________ ___________________________ Schaible, 874 F.2d 624, 629 (9th Cir. 1989), cert. denied, 495 ________ _____ ______ U.S. 904 (1990). Brooks has never sought the recusal of any individual Justice. While he attempts to justify this omission on the basis of various tactical considerations and by claiming that the NHSC's standard recusal mechanism is inapplicable to proceedings that fall within its original jurisdiction, his explanations lack force. For this reason alone, his claim must fail. In the second place, the baseline showing of bias necessary to trigger Younger's escape mechanism requires the _______ plaintiff to offer some evidence that abstention will jeopardize his due process right to an impartial adjudication. See Gibson, ___ ______ 411 U.S. at 577; Bettencourt, 904 F.2d at 780. The "evidence" ___________ that Brooks presents does not approach this benchmark. At most, Brooks' claim depends on a purely conclusory allegation that the Justices of the NHSC are predisposed to uphold their own policies and rules. But an entire group of adjudicators cannot be disqualified wholesale solely on the basis of an alleged institutional bias in favor of a rule or policy promulgated by that group. See, e.g., Doolin Security Savs. Bank v. FDIC, 53 ___ ____ ___________________________ ____ F.3d 1395, 1407 (4th Cir.), cert. denied, 116 S. Ct. 473 (1995); _____ ______ Hammond v. Baldwin, 866 F.2d 172, 177 (6th Cir. 1989). _______ _______ To implicate due process, claims of general institutional bias must be harnessed to a further showing, see ___ 15 Gibson, 411 U.S. at 579, such as a potential conflict of ______ interest, see, e.g., Ward v. Village of Monroeville, 409 U.S. 56, ___ ____ ____ ______________________ 60 (1972), or a pecuniary stake in the outcome of the litigation, see, e.g., Bettencourt, 904 F.2d at 780 n.10. For aught that ___ ____ ___________ appears, the Justices' interest (if any) in maintaining the privacy of attorney disciplinary proceedings appears to be purely Platonic.9 At least, Brooks has not produced any evidence that the NHSC or any individual Justice stands to gain or lose depending on whether attorney disciplinary proceedings are conducted in public or private, nor has he revealed the existence of any particularized interest in the outcome of his litigation that might tend to undermine the Justices' impartiality. In the third place, to the extent that Brooks contends that any individual Justice is actually biased or has prejudged his case, he offers no concrete evidence to that effect. Thus, he bumps up against the historic presumption that judges are "men [and women] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." Withrow v. Larkin, 421 U.S. 35, 55 (1975) _______ ______ (internal quotation marks and citation omitted). The presumption of judicial impartiality cannot be trumped by free-floating invective, unanchored to specific facts. See Kenneally, 967 F.2d ___ _________ at 333; Bettencourt, 904 F.2d at 780 n.10. ___________  ____________________ 9The structural bias claims, weak in all events, are further undermined by the recent amendments to the confidentiality rule. See supra note 2. Those amendments, adopted without dissent by ___ _____ the Justices, liberalize the rule in such a way as to provide a strong indication that the Justices are not wed to secrecy. 16 D. D. __ We add brief comments concerning two other claims that Brooks seems to make. 1. To the extent that Brooks invites us to forgo 1. Younger abstention because his attorney is the subject of a bad- _______ faith prosecution by the NHSC (arising out of disclosures made in violation of Rule 37(17)(a) whilst representing Brooks), we decline the invitation. The NHSC's investigation of Cobbin is not an enforcement proceeding brought without any realistic expectation of finding a violation of a rule; and, therefore, the investigation does not catalyze the bad-faith exception to the Younger doctrine. See Younger, 401 U.S. at 48; Fieger, 74 F.3d _______ ___ _______ ______ at 750; see also Dombrowski v. Pfister, 380 U.S. 479, 482 (1965). ___ ____ __________ _______ 2. In something of a non sequitur, Brooks, citing 2. Younger, claims that the threat of disciplinary proceedings _______ against him and his attorney for violations of the confidentiality rule chills the exercise of his First Amendment rights, and that the confidentiality rule is therefore "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, 401 U.S. at 53-54 (quoting Watson v. Buck, _______ ______ ____ 313 U.S. 387, 402 (1941)). But Younger itself belies this claim. _______ The Younger Court declared that "a `chilling effect,' even in the _______ area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state 17 action." Id. at 51; accord Fieger, 74 F.3d at 750. Here, Brooks ___ ______ ______ has posited no other legally tenable basis for his challenge. IV. CONCLUSION IV. CONCLUSION We need go no further. Although Brooks raises an important question about the interplay between New Hampshire's attorney disciplinary system and the First Amendment, that question is presently pending before the New Hampshire Supreme Court in a judicial proceeding that Brooks himself instituted. If, in the end, Brooks is not content with the result of that adjudication, he may then seek certiorari in the Supreme Court of the United States. He may not, however, rewardingly request the federal district court to enjoin the state proceedings. Affirmed. Affirmed. ________ 18