### In re PICKERING ESTATES, INC., Debtor.

No. 96–42845–2–11.

United States Bankruptcy Court, W.D. Missouri.

Jan. 17, 1997.

Lynn K. Ballew, Harrisonville, MO, for Pickering Place, Inc.

Max Jevinsky, Kansas City, MO, for Debtor.

David C. Stover, Trustee, Kansas City, MO.

Charles C. Curry, Grandview, MO, for State of Missouri.

### MEMORANDUM OPINION
FRANK W. KOGER, Chief Judge.

Debtor has filed a Motion Pursuant to 11 U.S.C. § 105 for Order Modifying Bond in Criminal Case, requesting this Court to enter an order modifying the conditions of a bond entered in a criminal proceeding now pending in Cass County Circuit Court against H. Dale Hon, the principal of the debtor company. The relevant underlying facts are as follows:

Debtor, Pickering Estates, Inc., is the owner and developer of certain improved and unimproved lots, completed residential dwellings and amenities in Pickering Place, an older adult community in Belton, Missouri. H. Dale Hon is the president, sole director and sole shareholder of the debtor company. He has been responsible for the development and marketing of Pickering Place since it was established in 1983. The residents of Pickering Place are members of Pickering Place, Inc. ("PPI"), a corporation organized for purposes of providing maintenance and other services to homeowners in Pickering Place. The debtor company, having the majority voting interest in PPI, elected Hon as president of PPI. At some point, a dispute arose between the debtor company and Hon, on the one hand, and PPI and certain residents of Pickering Place on the other hand, concerning governance of the homes association. In approximately June, 1995, these residents obtained control of PPI and purportedly ousted Debtor and Hon from their roles in PPI. The residents also challenged

the payment of compensation and reimbursement of expenses to the debtor and Hon for items such as maintenance of the water, sewer and cable systems serving Pickering Place.

The conflict between the parties escalated over the following year and on August 9, 1996, the Cass County Sheriff's department arrested Hon for allegedly turning off the water supply to Pickering Place. Bond was originally fixed at $100,000. Later that day, pursuant to a motion, the bond was reduced to $50,000 and a new condition was imposed, namely that Hon is prohibited from going within 100 yards of Pickering Place. Hon paid the 10% on the $50,000 bond and was released. Other than changes of judge and venue, little has developed in the criminal case since then. Meanwhile, Debtor filed its voluntary petition for relief under Chapter 11 on August 30, 1996.

Apparently, Hon's residence is located in Pickering Place, as are the debtor company's office and business records. Debtor asserts that because of the condition prohibiting Hon from going within 100 yards of Pickering Place, neither Hon nor the debtor have been able to participate in the bankruptcy proceedings. Debtor alleges that its counsel has attempted to contact the Cass County Prosecutor to discuss a possible modification of the bond so that Hon can move back home and so that he and the debtor can participate in this bankruptcy case, but that counsel has been unsuccessful in working out a modification.

Consequently, Debtor filed the instant motion in which it seeks the intervention of this Court, pursuant to its equitable powers under § 105, in requiring the modification of the bond so that Hon can return to his home and his business. Debtor asserts that unless this occurs, Hon will not have the ability to continue development of Pickering Place and to sell lots and finished residences or to assist the Chapter 11 trustee in doing so. According to Debtor, if Hon is prevented from assisting the trustee, any attempt at reorganization will fail.

PPI, through its officers and directors, filed an objection to the motion for order modifying the criminal bond. It agrees with Debtor's characterization that the relationship between the parties is quite acrimonious. PPI claims Hon has taken action and threatened to take further action against the residents of Pickering Place, particularly tampering with the water supply, which has placed the residents of Pickering Place in serious jeopardy for fire protection and safety. This, it contends, was the reason for the bond condition. PPI further asserts that the business records of the debtor have been delivered to the trustee and are available to Hon, albeit somewhere other than Pickering Place. He could, in fact, obtain the records presently from the trustee. PPI is also of the opinion that granting the motion and modifying the bond would actually impair, rather than assist, the trustee's ability to conduct an orderly administration and control the affairs of the debtor in that they include resolution of a number of difficult issues relating to the development and services. In other words, PPI believes Hon's participation would in fact be detrimental to the debtor's reorganization.

This Court conducted a hearing on the motion on November 27, 1996. At that hearing, in addition to Debtor and PPI presenting their positions on the motion, the State of Missouri, via the prosecuting attorney in the criminal matter, voiced its objection to the motion, declaring that the bond had been reduced on the condition that Hon stay away from the development and that Hon agreed to the condition at the time to get his bond reduced. It is the State's position that not only did Hon agree to the condition and he should be bound by it, but the safety of the residents of the development necessitate the condition. At the conclusion of the hearing, the Court took the matter under advisement and ordered the parties to brief the issue regarding this Court's jurisdiction to enter an order directing the State Court to modify a criminal bond condition.

■ Debtor filed its brief in support of this Court's jurisdiction to modify the State Court criminal bond, and both PPI and the State of Missouri filed their briefs in opposition to the motion. Debtor concedes, for the sake of argument, that this is not a core proceeding, but asserts this Court has juris-

diction under 28 U.S.C. §§ 1334(b) and 157(c)(1) and 11 U.S.C. § 105 [1] to enter proposed findings of fact and conclusions of law for the district court or to enter some form of interlocutory order or injunction so as to provide Debtor and Hon relief while at the same time avoid stepping on the State Court's toes.[2] Essentially, Debtor maintains that the prosecution is being pursued in bad faith by the prosecutor's office so as to appease a politically active constituency, namely the residents of Pickering Place and other older adults in the community, and that pursuant to this Court's equitable power under § 105, the Court should provide Debtor with relief. Debtor declares it only seeks this order so Hon can participate in the reorganization of the debtor company because, according to Debtor, reorganization will be impossible without him.

28 U.S.C. §§ 1334(b) and 157(c)(1), on which Debtor relies to support its contention this Court has "related to" jurisdiction, provide, respectively:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

■ Debtor relies on *Celotex v. Edwards*, —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), to support its contention that the criminal case is sufficiently "related to" this bankruptcy case to confer jurisdiction on this Court to issue proposed findings and conclusions or enter some other kind of interlocutory order. Particularly, the United States Supreme Court stated in that case:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is *whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Celotex*, —— U.S. at ——, n. 6, 115 S.Ct. at 1499, n. 6 (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984) (emphasis in original)). This Court will agree, *arguendo*, that the criminal proceeding is sufficiently related to this bankruptcy because the bond condition could conceivably have an effect on the estate in that it appears to have the effect of preventing Hon, the principal of the debtor, from participating as fully as he might absent the bond condition.[3]

---

1. Section 105 "cannot be read as an independent grant of authority to a specific judicial officer; rather, the § 105 powers of bankruptcy judges are limited to those authorized under 28 U.S.C. §§ 157 and 1334." *In re Si Yeon Park, Ltd.*, 198 B.R. 956, 968 (Bankr.C.D.Cal.1996) (*citing Celotex v. Edwards*, —— U.S. ——, ——, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995)).

2. Debtor suggests this Court may not have the authority to order the state court to take some affirmative action in relation to modifying the bond, but suggests that this Court could "encourage" the state court to modify the bond, or could order the prosecutor to modify its request, or enter some other form of relief. PPI complains that Debtor's motion is improper because does not make any specific request. It is not necessary for the Court to comment on this technical argument either way because as discussed, *infra*, the Court decides the motion on the merits.

3. The State of Missouri distinguishes *Celotex* on the ground that that case did not involve a criminal action, but *Younger* and its progeny, discussed, *infra*, indicate that criminal matters may be sufficiently related for purposes of bankruptcy jurisdiction.

 Nevertheless, this Court does not believe that the circumstances of this case warrant its equitable intervention at this time. As Debtor states, federal courts are reluctant to enjoin state court proceedings due to the fundamental deference to federalism. 28 U.S.C. § 2283, the Anti–Injunction Act, provides:

> A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Also as Debtor states, the bankruptcy law is one of the well-recognized exceptions to the Anti–Injunction Act. *In re Si Yeon Park, Ltd.,* 198 B.R. 956, 967 (Bankr.C.D.Cal.1996). However, under the rule enunciated in *Younger v. Harris,* 401 U.S. 37, 54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971), a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except on a "showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief."

> [A] federal court must abstain from reaching the merits of a case over which it has jurisdiction so long as there is (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding (or, at least, instituted prior to any substantial progress in the federal proceeding), that (2) implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit.

*Brooks v. New Hampshire Supreme Court,* 80 F.3d 633, 638 (1st Cir.1996). Federal courts must abstain where those seeking federal relief fail to meet the basic requirements for equitable intervention. *Loftus v. Township of Lawrence Park,* 764 F.Supp. 354, 357 (W.D.Pa.1991).

Clearly, the criminal proceeding is an ongoing state judicial proceeding instituted prior to this bankruptcy proceeding and implicates an important state interest, namely the prosecution of a person charged with tampering with the water supply to a community of older adults. The bond requirement restricting Hon from going near the development further implicates an important state interest, namely the prevention of further serious and potentially dangerous activity allegedly committed by Hon. The question, then, is whether the debtor has an adequate opportunity in the state action to raise the claims advanced in this bankruptcy, particularly Hon's desire to have access to his home and office so as to participate in the reorganization.[4]

This Court believes Hon and the debtor do have an adequate opportunity in the State Court to raise this claim. The enjoyment of one's home and office is not an interest unique to bankruptcy, even though admittedly Debtor's interest in Hon's access to his office has additional significance here. In any event, this Court is confident that the State Court considered Hon's interests, including his business interest in Pickering Estates, when it entered the bond condition and that it will continue to consider those interests as the criminal action proceeds. Both sides agree that the relationship between Hon and the residents is highly acrimonious and it is reasonable to presume the State Court balanced Hon's interests against the potential for additional problems with the residents. This Court further finds, despite Debtor's characterization of the agreement as unfair, it is significant that Hon himself agreed to the condition so as to have the bond amount reduced, which the State Court allowed.[5]

Under *Younger,* federal courts should abstain from interfering with state processes where equity does not clearly demand such interference. *Loftus,* 764 F.Supp. at 356.

---

4. The Court is aware that Hon and the Debtor are distinguishable entities and that proceedings involving one do not necessarily involve the other. However, this Court believes that because Hon is the principal of Debtor and because Debtor wishes to have the bond condition lifted so as to allow Hon as an individual to go into Pickering Place, the distinction does not make a difference one way or the other to this Court's decision to abstain from interfering in the state court proceeding.

5. Debtor states, "Goethe himself would have been pleased with this 'bargain'."

While Debtor asserts bad faith and harassment on the part of the residents, PPI, and the prosecutor's office, and asserts equity demands this Court's interference, this Court is not convinced.[6] The State has alerted this Court that this tampering charge is only the most recent of three criminal charges which have been brought against Hon regarding his activities in relation to Pickering Place. It states that in light of Hon's repeated criminal acts against the residents of Pickering Place, it was reasonable for the State Court to impose the restriction against his going within 100 yards of the development and that the restriction is necessary for the safety of the residents and the peace of the development. Of course Debtor asserts that all of the altercations were provoked by the residents but this Court declines to make any judgment as to which party is at fault. Clearly, the State Court is in a far better position to make such a determination than is this Court and if the State Court was convinced that Hon's presence near Pickering Place poses a threat to the residents there, this Court will not disagree. Moreover, this Court is not convinced that the prosecution is responsible for causing delay in the criminal action. Again, the place to raise that is the state court.

Furthermore, PPI has agreed to turn over any records to the debtor. PPI also makes a compelling argument that Hon's participation in the reorganization, at least in terms of his physical presence in Pickering Place, may be more detrimental than beneficial to the reorganization. Hon admits he has been the subject of vandalism and negative press in regard to his involvement with Pickering Place. Consequently, the Court finds that at this point, Hon's physical presence in Pickering Place is not vital to the debtor's reorganization and in fact may be detrimental to it. As the principal of the debtor company, Hon's participation may very well aid the trustee, but his physical presence in Pickering Place is not necessary under these circumstances. Essentially, this Court finds

that equity does not demand this Court intervene in the state court criminal action.

■ As a final note, both PPI and the State contend this Court lacks jurisdiction to enter an order governing a state court criminal proceeding because § 362(b)(1), (4), and (5) provide that the filing of a bankruptcy petition does not operate as a stay of the commencement or continuation of a criminal action against the debtor, or against a proceeding or the enforcement of a non-monetary judgment by a governmental unit to enforce a governmental unit's police or regulatory power. They are correct on that point. However, the bankruptcy court's § 105 equitable power applies when the automatic stay does not. In other words, it is because the automatic stay does not apply to the criminal action that the § 105 equitable power of the Court is called into play. In any event, as discussed at length above, this Court is declining to exercise its § 105 power to provide Debtor with the relief it requests in the instant motion.

### CONCLUSION

For the foregoing reasons, Debtor's Motion Pursuant to 11 U.S.C. § 105 for Order Modifying Bond in Criminal Case is hereby DENIED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

---

**6.** PPI took issue with the debtor's characterizations of the various parties and events in Debtor's brief. The Court agrees that some of the portrayals and accusations made by the debtor are very serious and hopes they were not made lightly. However, this Court has no evidence as to whether or not any of those allegations are true. The place to make those allegations is in the state courts.