**Thomas RIVERA–SCHATZ Plaintiff,**

v.

**Anabelle RODRIGUEZ,
et al., Defendants.**

**No. CIV. 04–1048(HL).**

United States District Court,
D. Puerto Rico.

March 5, 2004.

Edgar R. Vega–Pabon, Vega Pabon, Rodriguez Encarnacion & Lopez Covas, San Juan, PR, for Plaintiff.

Carlos Del–Valle–Cruz, Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

On January 26, 2004, plaintiff Thomas Rivera Schatz ("Rivera Schatz") brought this action under 42 U.S.C. § 1983 against the defendants [1] for alleged violations of his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. Rivera Schatz seeks declaratory and injunctive relief -the invalidation of Puerto Rico's riot act [2] and an injunction enjoining the Commonwealth's current criminal proceedings. (*See* Dockets No. 1 and 6, Verified Complaint and Motion Requesting Preliminary Injunction.)

On February 6, 2004, the Court held a status conference in which both parties presented their arguments on whether the Court should enjoin the pending state criminal proceeding against Rivera Schatz. At the time of the hearing, Rivera Schatz's state criminal prosecution was at the jury

---

1. The defendants are: Puerto Rico's Secretary, Anabelle Rodríguez; Pedro Goyco Amador, the General Prosecutor; and José Capó Rivera, San Juan District Prosecutor.

2. Article 261 of the Puerto Rico Penal Code, 33 P.R. Laws Ann. § 4522.

selection stage. The Court granted Rivera Schatz his request for six (6) days to file a summary judgment motion, and gave defendants ten (10) days to respond. Defendants had earlier filed a Motion to Dismiss on *Younger* abstention grounds (Docket No. 9). In their response to Rivera Schatz's summary judgment motion, defendants again reiterate their position that the Court should abstain from entertaining Rivera Schatz's claims. (Docket No. 14).

### FACTUAL BACKGROUND

Plaintiff Rivera Schatz is one of four prominent New Progressive Party ("NPP") leaders who is being charged by the Puerto Rico Department of Justice for an alleged violation to Article 261 of the Puerto Rico Penal Code. The facts of the case are taken from plaintiff's verified complaint and are set forth in the light most favorable to the plaintiff in accordance with Federal Rule of Civil Procedure 12(b)(6).

Sometime before June 20, 2002, reporter Jorge Blanco from a local radio station, conducted an interview with attorney María Dolores Fernós (Fernós), who heads the Commonwealth's Office of the Women's Advocate ("OWA"), a governmental agency. Fernós was appointed to the post by governor Sila M. Calderón, a member of the Popular Democratic Party. In the course of that interview, Fernós admitted that the OWA agency headquarters did not have a United States flag displayed alongside Puerto Rico's flag because, in her view, no law required her to do so.

On June 20, 2002, certain members of the Puerto Rico House of Representatives, who support the NPP gathered in San Juan. At that meeting, someone made a comment alluding to the aforementioned interview in which Fernós had said that she was refusing to display the U.S. flag at OWA headquarters. Thereafter it was suggested that the group take the U.S. flag to OWA headquarters and have it displayed alongside the Puerto Rico flag. Around mid-day, a number of NPP supporters assembled on the north side steps of the Capitol building. Then NPP President, Carlos I. Pesquera ("Pesquera") arrived at the scene and joined the gathering. The group then began to walk toward the OWA headquarters, with Pesquera at the helm of the procession.

Plaintiff Rivera Schatz arrived to the OWA around 3:00 p.m. He had no specific or detailed information about the activity. When he arrived, the group lead by Pesquera, was peaceably assembled at the entrance of the OWA building. The entrance consisted of two side-by-side glass doors which lead to a vestibule and the building's public reception area. From the street, those gathered outside could see that, in fact, the OWA's public reception area had a Puerto Rico flag displayed, but not a United States flag.

The glass doors that led to the OWA building were locked from the inside. Several men stood inside the ground vestibule, leaning against the inside of the glass doors, and keeping them closed. When Pesquera arrived at the OWA entrance, he encountered Vanessa Rodríguez ("Rodríguez"), a spokeswoman for Fernós. Rodríguez was standing on the sidewalk outside OWA headquarters. The members of the news media present at the site gathered around Pesquera and Rodríguez and recorded their conversation.

Initially, Rodríguez told Pesquera that only he would be allowed to enter the OWA. Pesquera replied that he wished to meet with Fernós, and two of the women who walked with him, to discuss their interest in having the Untied States flag displayed alongside the Puerto Rico flag in the OWA's public reception area. After making some telephone calls, Rodríguez

informed Pesquera that his request was unacceptable. Pesquera urged Rodríguez to try and obtain permission for them to enter the OWA. Rodríguez re-entered the building and later returned to the street, whereupon she resumed her conversation with Pesquera. At some point thereafter, one of the glass entrance doors leading to the OWA headquarters, was unlocked, and someone pulled Rodríguez back into the ground floor vestibule. The people on the inside then closed and locked the glass doors.

The people gathered outside waited, expecting that they would be allowed to enter the OWA. Inside of the OWA building, OWA's personnel began to gather in the public reception area, in the staircase and stairwell leading to the reception area, and in the ground floor vestibule. The media representatives who were gathered outside the building, were pushing and shoving, jockeying for a position to observe and record the happenings. Also gathered outside were officers, of various ranks, of the Puerto Rico Police Department. Including, Wanda Rivera ("Commander Rivera"), who had arrived at the OWA entrance, to speak with Pesquera. Pesquera again expressed his desire to enter OWA and place the United States flag alongside the Puerto Rico flag. Commander Rivera made several calls on her cellular telephone. She was thereafter allowed to the enter the OWA, after which point the people on the inside again closed and locked the entrance glass door. When Commander Rivera reemerged she informed Pesquera that Fernós insisted in denying entry to the building to place the United States flag in the public reception area.

Shortly after 3:00 p.m., Fernós announced that she would hold a press conference in her office and ordered that the members of the media be allowed to enter. Thereafter, the glass doors were unlocked and the members of the media were allowed to enter the building. Fernós then held a press conference. Upon its conclusion, the members of the media headed out the public reception area to exit the building.

Shortly after 5:00 p.m., the OWA's entrance doors were unlocked and opened. At that point, Pesquera and his followers went through the open door, into the OWA's ground vestibule, and began to make their way up the staircase towards the OWA's public reception area carrying the United States flag. OWA personnel tried to prevent Pesquera and others from entering the OWA to place the United States flag alongside the Puerto Rico flag. People continued to enter the building as Pesquera tried to make his way up the staircase. During that time OWA personnel continued to prevent Pesquera and his followers form achieving their stated goal.

Rivera Schatz did not participate in the planning of the OWA march. He arrived at 3:00 p.m. on the afternoon of June 20, 2002, and remained there until approximately 5:00 pm. When the people began entering the OWA building, Rivera Schatz was trying to reach Pesquera. His sole participation in the event was to grab Dennis Arroyo's arm to prevent him from assaulting State Representative José F. Aponte Hernández.

As a result of the events of June 20th, on June 28, 2002, criminal charges for a violation to Article 261 were brought against plaintiff Rivera Schatz and several other prominent members of the NPP party. Despite the fact that in his verified complaint, Rivera Schatz asserts that several OWA officials physically assaulted some of the NPP sympathizers in their efforts to prevent them from placing the United States flag at OWA's premises, nobody from the OWA was charged with violating any local statute. Currently four

NPP leaders [3] are being tried at a state court for the aforementioned charges.

## DISCUSSION

 In his motion for summary judgment Rivera Schatz has discussed at length whether he has standing to challenge the constitutionality of Article 261 of the Puerto Rico Penal Code, and whether the controversy is ripe for adjudication. Since Rivera Schatz is actually being prosecuted under the challenged law, plaintiff is correct—he has standing, and his claim is ripe for adjudication. Nonetheless, the *Younger* abstention doctrine, poses an imposing obstacle for Rivera Schatz. Under *Younger* and its progeny, abstention is required "even if a case involves a constitutional allegation and all jurisdictional and justiciability requirements are met." *El Día, Inc. v. Rosselló*, 30 F.Supp.2d 160, 176 (D.P.R.1998).

This Court is required to abide by one of our country's most fundamental ideals—the ideal of "federalism"—"a system in which there is a sensitivity to the legitimate interests of both State and National Governments, and which the National Government, anxious though it may be to vindicate federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Still, this is a case that gives the Court pause. Its allegations of constitutional right violations and prosecutorial impropriety are quite serious and not to be lightly regarded.

### A. *Younger Abstention*

Under our federalist system, "the balance of power between federal and state courts is delicate, and federal courts must tread with care whenever they are asked to intervene in pending state actions." *Smith v. Gribetz*, 887 F.Supp. 583, 586 (S.D.N.Y.1995). Even when, as here, a controversy gives a Court particular cause for concern, the Court must uphold its duty to strike that balance fairly and impartially. In *Younger*, the United States Supreme Court held that federal courts should abstain from enjoining pending criminal proceedings in state court absent exceedingly rare and extraordinary circumstances. *Id.* at 53, 91 S.Ct. 746; *Carbone v. Zollar*, 845 F.Supp. 534, 537 (N.D.Ill.1993). "[T]he *Younger* Court articulated the federal judiciary's obligation to refrain from adjudicating the merits of federal claims where to do so would needlessly inject federal courts into ongoing state criminal prosecutions." *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 637 (1st Cir.1996).

 In determining whether to abstain from enjoining an ongoing criminal proceeding, the Court must consider the following questions: (1) whether there are ongoing state proceedings; (2) whether those proceedings implicate important state interests; and (3) whether the state proceedings afford plaintiff an adequate opportunity to present his federal claims. *See Brooks*, 80 F.3d at 638 (citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)); see also, *Schlagler v. Phillips*, 166 F.3d 439, 442 (2nd Cir.1999).

The first prerequisite for *Younger* abstention is satisfied here, since it is undisputed that plaintiff Rivera Schatz is currently being prosecuted for an alleged

---

**3.** The NPP leaders currently on trial are: Carlos Ignacio Pesquera, Leonides Diaz, Edwin Mundo and plaintiff Rivera Schatz.

violation to Article 261 of Puerto Rico's Penal Code. The second requirement is also met, since the state has a legitimate interest in enforcing its laws against those citizens who allegedly engage in conduct defined as punishable under its statutes. Lastly, the Court believes, although again, not without hesitation, that the pending state proceeding affords Rivera Schatz an opportunity to raise his constitutional challenge. The clearest illustration of this point is that Rivera brought some of his constitutional challenges before the local appeals court. (*See* Docket No. 14, Exhibit I, Order issued by the Circuit Court of Appeals, San Juan Region.) Indeed, Leonides Diaz, another of the NPP members charged under Article 261, raised some of the same constitutional challenges currently brought by the plaintiff at the Puerto Rico Supreme Court. (*See El Pueblo de Puerto Rico v. Leonides Diaz Urbina,* 2003 WL 21710215 (P.R., July 16, 2003)(dissenting opinion)). As a result, the Court concludes, guided principally by its strong-held belief in our federalist system, that the state proceedings afford Rivera Schatz an adequate opportunity to present his federal constitutional claims.

### B. *Exceptions to Younger Abstention*

■ Where, as here, the *Younger* requirements are satisfied, "a federal court may nonetheless intervene to halt an ongoing state judicial proceeding if the plaintiff demonstrates 'bad faith, harassment, or any other unusual circumstance.'" *Brooks,* 80 F.3d at 639. In his summary judgment motion Rivera Schatz argues that the charges leveled against him are motivated by bad faith, as demonstrated by defendants' selective prosecution. Rivera Schatz contends that the fact that only the NPP leaders were charged with violating Article 261 shows that the charges are motivated by bad faith and designed to 'chill' his legitimate First Amendment rights to free speech and political association.

■ "Bad faith, for purpose of *Younger,* entails a showing that the statute [in question] was enforced against [plaintiff Rivera Schatz] with no expectation of convictions, but only to discourage exercise of protected rights." *See Carbone v. Zollar,* 845 F.Supp. at 538 (citing *Cameron v. Johnson,* 390 U.S. 611, 621, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968)). In determining whether a prosecution is commenced in bad faith or to harass, courts have typically considered three factors: "(1) whether [the prosecution] is frivolous or undertaken with no reasonable objective hope of success...; (2) whether [the prosecution is] motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights...; and (3) whether [the prosecution is] conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps v. Hamilton,* 59 F.3d 1058, 1065 (10th Cir.1995)(internal citations omitted).

Unlike most of the cases dealing with bad faith and harassment, this is not an instance in which the plaintiff has been subjected to multiple charges and/or prosecutions. In fact, this is the first and only time that Rivera Schatz has been charged for a violation of Article 261. The factual background underlying this case does lend support to Rivera Schatz's argument that the prosecution may well be motivated by a desire to retaliate against certain prominent NPP supporters. However, claims of "bad faith must be supported with specific allegations from which [this Court] may infer that defendants knowingly instituted meritless prosecutions against the [NPP

supporters] solely to discourage exercise of protected rights." *Carbone* at 538 (citing *Dombrowski v. Pfister,* 380 U.S. 479, 487–89, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)). The Court will not tinker with the well-settled principle that the 'district attorney alone', should decide when and in what manner to prosecute a suspected offender. *See Schlagler v. Phillips,* 166 F.3d 439, 444 (2nd Cir.1999). The Court notes that Rivera Schatz may bring his allegations of selective prosecution as an affirmative defense to the claim for which he is charged at the state court proceeding. *See El Pueblo de Puerto Rico v. Leonides Diaz Urbina,* 2003 WL 21710215 *47 (P.R., July 16, 2003)(dissenting opinion). Consequently, there is nothing from preventing Rivera Schatz from presenting this defense to the jury at the ongoing trial.

▮ Lastly, the Court notes that, in his summary judgment motion, Rivera Schatz devotes a significant portion of his brief to questioning the constitutionality of Article 261. Under *Younger* and its progeny, federal courts may enjoin a pending state criminal proceeding "where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)(citing *Younger v. Harris,* 401 U.S. at 53–54, 91 S.Ct. 746.) Since *Younger* was decided there has not been a single instance in which the Court has invoked the patently unconstitutional exception to justify federal intervention. *See* Erwin Chemerinsky, Federal Jurisdiction § 13.4 at 808 (3d. ed.1999). The mere "possib[ility of the] unconstitutionality of [Article 261 of Puerto Rico's Penal Code] 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." *Younger* at 54, 91 S.Ct. 746. The constitutionality of Article 261 on grounds of vagueness is a matter that may not be addressed at the present juncture of these proceedings because of *Younger* imposed constraints on the Court. However, the vagueness claim gives this Court pause. (*See* cogent dissenting opinion in *El Pueblo de Puerto Rico v. Leonides Diaz Urbina,* 2003 WL 21710215).

For the foregoing reasons, plaintiff's request for a temporary restraining order, a preliminary injunction and a permanent injunction is denied. As required by our federalist system of governance, the Court will abstain from enjoining the criminal proceeding against Rivera Schatz and shall allow his defense to be presented before the jury at the ongoing trial.

### CONCLUSION

In view of the aforementioned, the Court hereby **DENIES** plaintiff Rivera Schatz's Motion for Preliminary Injunction (Docket No. 6), and **GRANTS** defendants' Motion to Dismiss on *Younger* abstention grounds (Docket No. 9). Plaintiff's motion for summary judgment is **DENIED as MOOT.** Judgment dismissing this case shall be entered accordingly.

**IT IS SO ORDERED.**