**James F. SMITH, Plaintiff,**

v.

**Honorable Kenneth GRIBETZ, District Attorney, Rockland County, Defendant.**

**No. 95 Civ. 2302 (WCC).**

United States District Court, S.D. New York.

May 26, 1995.

Fischer Weisinger Caliguire & Porter, New York City, (Jay D. Fischer, Mitchel J. Shornick, of counsel), for plaintiff.

District Attorney's Office of Rockland County, New City (Jason Paroff, Sr. Asst. Dist. Atty., of counsel), for defendant.

WILLIAM C. CONNER, Senior District Judge.

Plaintiff brought this action under 42 U.S.C. § 1983 seeking to remedy alleged violations of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Plaintiff has applied for an order temporarily, preliminarily and permanently restraining and enjoining the New York State criminal proceeding currently pending against him in the County Court for the County of Rockland. For the reasons set forth below, we decline to enjoin New York State's prosecution of plaintiff. We also deny defendant's motion for sanctions under Rule 11, Fed.R.Civ.Pro., and deny defendant's motion to dismiss this action.

## BACKGROUND

Plaintiff James F. Smith is the former Chief Executive Officer and Chairman of the Board of Orange & Rockland Utilities Inc. ("O & R").[1] In March 1993, O & R filed a civil action in New York Supreme Court alleging that plaintiff misused approximately $366,000 worth of corporate funds and property. On June 10, 1994, Justice Howard Miller compelled arbitration of O & R's claims pursuant to a provision in plaintiff's employment contract.

In August 1993, a vice-president of O & R was arrested and charged with criminal misconduct relating to her employment at O & R. Shortly thereafter, Judge Ingrassia, the administrative judge for the ninth judicial district of New York, ordered a special investigative grand jury impaneled to investigate any criminal conduct relating to O & R and its employees. In late August 1993, Smith initiated the appointment of a Special Committee of the Board of Directors to conduct an internal investigation at O & R.

On March 21, 1994, Smith was indicted by the grand jury. That same grand jury returned a superseding indictment (Indictment No. 137/94) on June 12, 1994, charging Smith with 24 counts of larceny and falsifying business records. Each count stems from Smith's alleged improper use of corporate funds and property for personal purposes. In sum, the indictment charges Smith with the misappropriation of approximately $45,-000.

From the summer of 1993 onward, both the internal and grand jury investigations excited intense media scrutiny. O & R, presumably seeking to repair its damaged reputation with its customers, mailed a series of informational notices to the ratepayers along with their utility bills. In March 1994, while the grand jury that indicted Smith was sitting, each customer received a notice discussing the progress of O & R's internal investigation and announcing a total rebate of approximately sixty cents per customer based on the investigation's finding, as of that date, that approximately $345,000 had been misappropriated. Furthermore, the brochure stated that "[s]hould new disclosures in any of the current investigations indicate additional losses, all ratepayers' bills will reflect additional refunds." *See* O & R Newsletter, attached as Exhibit B to the Complaint. The parties do not dispute that virtually every

---

1. Plaintiff and O & R entered into a contract on December 1, 1988 that set the terms of his employment. On October 7, 1993, O & R notified Smith that it was terminating his employment. Smith challenges the legality of that action, but is not currently employed by O & R.

member of the grand jury was a customer of O & R and therefore received this notice.

Smith made a motion to dismiss the indictment before Rockland County Court Judge Robert Meehan, on the grounds that, *inter alia,* the grand jury was impermissibly biased and the conduct for which plaintiff was indicted was not criminal. That motion was denied. Smith then applied to the Appellate Division for a Writ of Prohibition and to the Court of Appeals for leave to appeal. Both of those applications were denied. The District Attorney of Rockland County, defendant Kenneth Gribetz,[2] is currently proceeding with the prosecution of plaintiff.

Plaintiff brought suit in this court under 42 U.S.C. § 1983 against the District Attorney, alleging that the indictment and continued prosecution of plaintiff violate his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. He has requested an order temporarily, preliminarily and permanently restraining and enjoining the state court criminal proceedings against him and awarding damages, including costs and attorney's fees for this action.

Defendant has filed a motion to dismiss this action, and has moved for sanctions against plaintiff, including reasonable attorney's fees, under Rule 11, Fed.R.Civ.P.[3]

## DISCUSSION

### I. Plaintiff's Application for Injunctive Relief

■ Under our system of federalism, the balance of power between federal and state courts is delicate, and federal courts must tread with care whenever they are asked to intervene in pending state actions. The policy against interference by federal courts is embodied in the Anti–Injunction Statute, which provides that a federal court may not enjoin a pending state proceeding "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or

to protect or effectuate its judgments." 28 U.S.C. § 2283. The Supreme Court has held that Section 1983 expressly authorizes federal courts to enjoin state proceedings. *See Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). We recognize, therefore, that the Anti–Injunction Statute does not prohibit us from enjoining the state's prosecution of plaintiff.

■ Simply because the statute does not forbid granting the relief that plaintiff has requested does not, however, mean that we should intervene. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that the principles of equity, comity and federalism require that federal courts abstain from interfering in pending state court prosecutions unless the party seeking the injunction can demonstrate that the danger of irreparable loss is both great and immediate. The Court explained that "[c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable'...." *Younger,* 401 U.S. at 46, 91 S.Ct. at 751. A plaintiff can, however, satisfy the irreparable injury requirement by showing that 1) the state law being enforced is "flagrantly and patently violative of express constitutional prohibitions," 2) the prosecution is being undertaken in bad faith without hope of obtaining a valid conviction or for the purpose of harassing the plaintiff, or 3) other "extraordinary circumstances" exist that justify granting injunctive relief. *Mitchum,* 407 U.S. at 230, 92 S.Ct. at 2155–56 (citing *Younger,* 401 U.S. at 46, 53–54, 91 S.Ct. at 751, 754–755, and *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 676–77, 27 L.Ed.2d 701 (1971)).

The Supreme Court has repeatedly stressed that the exceptions to the abstention doctrine announced in *Younger* are very limited and that federal courts should enjoin state court criminal actions only rarely. *See, e.g., Younger,* 401 U.S. at 46, 91 S.Ct. at 751.

---

2. This Court is aware that Kenneth Gribetz has recently resigned his position as District Attorney. At all times pertinent to this decision, however, he served in that capacity.

3. The facts recited above are drawn primarily from the Affidavit of James F. Smith, dated July 14, 1994, attached as Exhibit A to the Complaint in this action, and from the Affidavit of Jason Paroff, dated April 10, 1995, submitted in support of the defendant's motions.

Plaintiff thus bears a very heavy burden of persuasion on his request for an injunction halting the state's prosecution. We are not convinced by his arguments, and we decline to issue an injunction.

## A. Extraordinary Circumstances

■ Plaintiff bases his application primarily on his contention that the situation in this case presents us with the requisite "extraordinary circumstances" to justify a departure from the general rule against federal court interference in state court criminal proceedings.[4] Plaintiff argues that the indictment returned against him is constitutionally defective in several respects and that these flaws combine to create a situation sufficiently unique to necessitate a finding of extraordinary circumstances.

First, plaintiff notes that each and every member of the grand jury that indicted him was a ratepayer of O & R. Plaintiff points to the extensive publicity that surrounded O & R's internal investigation and the grand jury's inquiries into possible misconduct at O & R and argues that the relationship between O & R, including its current and former executives, and its customers was necessarily antagonistic throughout the period during which the grand jury was deliberating. Furthermore, plaintiff points to the notices received by O & R customers informing them that they might receive further rebates if either of the investigations uncovered more misappropriated funds. Plaintiff argues that each and every grand jury member had therefore been told, while the grand jury was considering indicting plaintiff, that he or she had a pecuniary interest in the prosecution of plaintiff for larceny.

Plaintiff thus contends that this is not a typical jury-bias case, where the impartiality of one or two jury members might be questioned. According to plaintiff, all of the grand jury members shared the same bias against O & R, preventing any of them from impartially evaluating the evidence presented against Smith. Plaintiff therefore asserts that the indictment violates his right under the Fifth and Sixth Amendments to be indicted by an impartial grand jury.

Furthermore, plaintiff argues that the grand jury indictment violates his due process rights by charging him with conduct that is not criminal. Plaintiff alleges that each count of the indictment concerns conduct that might subject him to civil liability, at most, for breaching the provisions of his employment contract, which governed the perquisites that he was entitled to receive from O & R. To support this contention, plaintiff relies primarily on the case of *Boyle v. Petrie*, 136 Misc.2d 380, 518 N.Y.S.2d 854 (N.Y.Sup.Ct.1987), in which the court held that a company could not argue that it had discharged an executive for cause based on dishonesty when the company alleged only that the executive had mishandled his expense account. The court stated that the executive could not be deemed dishonest absent an attempt to misrepresent or to conceal the expenditures, although his expenditures might have been improper and he might be obligated to reimburse the company. *See id.*, 518 N.Y.S.2d at 859–60. Plaintiff asserts that *Boyle* stands for the proposition that "in the absence of gross misconduct in the use of corporate perquisites, ... such matters should be viewed and resolved as civil disputes," Smith Affidavit, at ¶ 24. Smith also contends that because "misuse or abuse of executive perquisites does not even rise to the level of 'dishonesty' for purposes of civil litigation unless any reasonable man would find the participant's use gross and improper," *id.*, at ¶ 68, his alleged conduct cannot possibly be considered criminal.

Plaintiff also argues that he is the victim of selective prosecution. He cites numerous other instances of conduct by high-level employees at O & R that he considers similar to his own and asserts that some of those incidents have gone wholly unremarked, while others have resulted in requests by O & R for reimbursement from the executives involved. Smith asserts that he alone faces criminal prosecution.

---

**4.** Plaintiff, not surprisingly, does not argue that the provisions of the New York criminal code under which he was charged were "flagrantly and patently" unconstitutional. Therefore, we have no occasion to address the first exception to the *Younger* doctrine.

In sum, plaintiff argues that the conjunction of these circumstances—the grand jury members' status as ratepayers of O & R, the grand jury members' receipt of rebate notices from O & R, and the District Attorney's selective prosecution of plaintiff for conduct that cannot be considered criminal—is sufficiently unique and poses a sufficiently serious threat to plaintiff's rights under the Fifth, Sixth and Fourteenth Amendments to satisfy the "extraordinary circumstances" exception to the rule of *Younger v. Harris*.

■ We acknowledge the gravity of plaintiff's allegations. However, as the Supreme Court stated in *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975):

> The policy of equitable restraint expressed in *Younger v. Harris*, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights. Only if 'extraordinary circumstances' render the state court incapable of fully and fairly adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process.

*Kugler*, 421 U.S. at 124, 95 S.Ct. at 1530–31 (citations omitted). The Court further explained that while it could not anticipate every situation that might fall within the ambit of extraordinary circumstances, "such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Id.*, at 124–25, 95 S.Ct. at 1530–31. In this case, plaintiff's situation is certainly unusual. We see, however, no reason why plaintiff cannot obtain a full and fair adjudication of his federal constitutional claims in the state court proceeding.

In *Kugler*, former New Jersey Municipal Court Judge Helfant brought suit under section 1983, seeking to enjoin the state's criminal prosecution of him for obstruction of justice and false swearing. The indictment in that case was based on Helfant's testimony before a grand jury investigating corruption in the state judicial system. Helfant alleged that his testimony was coerced, in violation of his federal constitutional rights, by personal pressure from several members of the New Jersey Supreme Court. In seeking an injunction, Helfant argued primarily that he would be unable to obtain a fair trial of his federal constitutional claims in the New Jersey court system. *See id.*, at 120–22, 95 S.Ct. at 1528–30. The Supreme Court held that, given a defendant's ability under New Jersey law to disqualify an interested judge upon request and given the turnover in personnel on the New Jersey Supreme Court since Helfant had testified, there was no indication that Helfant could not receive an impartial evaluation of his federal constitutional claims in the New Jersey courts. *See id.*, at 127–29, 95 S.Ct. at 1532–33. The Supreme Court therefore ordered Helfant's section 1983 suit dismissed. *See id.*, at 131, 95 S.Ct. at 1534.

If an injunction was inappropriate in *Kugler*, where the complaint in the plaintiff's federal action alleged that members of New Jersey's highest court were actively involved in violating plaintiff's constitutional rights, then an injunction is certainly not warranted in this case. Plaintiff raised each of his federal constitutional arguments in a motion to dismiss the indictment that was included in an Omnibus Motion made before Judge Meehan in Rockland County Court. That motion was denied. The same contentions were raised by application for a Writ of Prohibition to the Appellate Division and by an application for leave to appeal to the Court of Appeals. Those applications were also denied.

Each of plaintiff's allegations of defects in the indictment addresses alleged constitutional flaws in the composition of the grand jury and in the District Attorney's conduct. Plaintiff does not allege bias on the part of any of the state judges reviewing plaintiff's federal constitutional claims. Even if the Complaint could be read as questioning the impartiality of Judge Meehan, who sits in Rockland County and is perhaps also an O & R ratepayer,[5] plaintiff has provided us with

---

5. Plaintiff does cite a somewhat colorful remark

made by Judge Meehan while sentencing other

no reason to suspect any lack of objectivity on the part of the Appellate Division or Court of Appeals judges who also reviewed the indictment. We have no doubt that plaintiff has been afforded a full and fair opportunity to air his federal constitutional claims in New York state court.

We decline, therefore, to substitute our judgment for the judgment of the New York state courts. While we recognize that the factual situation in which plaintiff finds himself is unusual, we cannot discern an "extraordinarily pressing need for immediate federal equitable relief." *Kugler*, 421 U.S. at 125, 95 S.Ct. at 1531. Hence, we find that plaintiff has not demonstrated the requisite "extraordinary circumstances" that would justify our intervention in the state criminal proceedings against him.

## B. Bad Faith

Plaintiff also argues that the constitutional defects of the indictment and continued prosecution are so apparent that the District Attorney is acting in bad faith, i.e., without hope of obtaining a valid conviction, by continuing the prosecution of Smith. We see no reason to find that the District Attorney is acting without hope of a valid conviction, especially when the state trial court and both levels of state appellate courts have reviewed and upheld the validity of the indictment under which the District Attorney is proceeding.

■ Finally, plaintiff alleges that the District Attorney is continuing this prosecution in bad faith because the prosecution is "politically motivated." Complaint, at ¶ 22. Plaintiff does not argue this point in his Memorandum in support of his application for injunctive relief, nor does he provide any support for his assertion. We recognize that, as a practical matter, the extensive media coverage of the investigations into misconduct by O & R employees must have encouraged the District Attorney to pursue aggressively persons who might have misappropriated company funds or engaged in other forms of criminal misconduct. The desire to garner good press for prosecuting the alleged wrongdoers is not, however, an improper political motivation. Plaintiff has not made any more specific allegations that would lead us to conclude that the District Attorney's prosecution of plaintiff is improperly motivated by political concerns. Certainly, we should not interfere in a pending state court proceeding on the basis of plaintiff's conclusory contention.

For the foregoing reasons, plaintiff's request for a temporary restraining order, a preliminary injunction and a permanent injunction against the state court prosecution is denied. The state criminal proceeding against plaintiff may go forward without our interference.

## II. Defendant's Motion for Sanctions

■ Turning to the District Attorney's motions, we first address his application for sanctions and fees to be assessed under Rule 11, Fed.R.Civ.P., against Smith and his attorneys for filing this action. The District Attorney alleges that this action is frivolous and was filed solely for the purpose of hindering the District Attorney's efforts promptly to prosecute Smith in state court.

Sanctions under Rule 11 are appropriate when:

> it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985). While

---

former O & R employees in another action: "You steal from the poor to become rich. It's from the ratepayers ... so you can live in the lap of luxury. I speak today for the silent voices of ratepayers of Orange and Rockland Utilities: enough is enough." Complaint, at ¶ 19.

That remark was not made during the proceedings in this case, and plaintiff does not directly allege any sort of bias on the part of Judge Meehan. We see no reason to infer from this remark, made after the defendants in that case had been convicted, that Judge Meehan could not or would not fairly evaluate plaintiff's constitutional claims in this case.

Smith was unsuccessful in his application to this court, we agree with him that his situation is novel. We do not doubt that this action was filed in a good faith attempt to pursue all possible avenues of relief that might be open to plaintiff. Although his request for injunctive relief proved fruitless, we do not fault Smith or his attorneys for trying it. Accordingly, we deny the District Attorney's application for sanctions.

### III. Defendant's Motion to Dismiss

The District Attorney has also requested that we dismiss this suit, on the ground that the only relief sought by plaintiff was the injunctive relief that we have denied here. If this contention were correct, dismissal would probably have been the appropriate resolution of this case. The Complaint, however, also requests damages. *See* Complaint, at ¶ 23(2). While plaintiff's application for an injunction was, in all likelihood, the focus of this action, we cannot determine, before plaintiff's criminal prosecution has been completed, whether or not plaintiff might be entitled to present a claim for damages to this Court. Accordingly, we order this action placed on this Court's suspense docket pending the resolution of the criminal prosecution of plaintiff in New York state court. Plaintiff is directed to inform the Court of any resolution of the criminal case, and to keep the Court informed as to any changes in the status of plaintiff's criminal trial and any appeals that follow.

### CONCLUSION

For the foregoing reasons, we deny plaintiff's request for an order temporarily, preliminarily and permanently restraining and enjoining New York State's criminal prosecution of plaintiff. We also deny defendant's motion to dismiss and motion for Rule 11 sanctions.

**SO ORDERED.**