**Norman T. OLSON, Jr., Plaintiff**

v.

**Victor FAJARDO–VELEZ, Jose Omar Cruz–Mercado, Marta J. Santos–Sanchez, Anabelle Rodriguez–Rodriguez, Roberto Sanchez–Ramos, Sergio Rubio, Alberto Valcarcel–Ruiz, Aristides Cales–Fraticcelli, Pedro Geronimo Goyco–Amador, Defendants.**

**Civil No. 05–1837 (HL/GAG).**

United States District Court, D. Puerto Rico.

March 2, 2006.

Esther Castro–Schmidt, San Juan, PR, Phv Heidi L. Belongia, Phv Martin J. Bishop, Robert M. Stephenson, Foley & Lardner, LLP, Chicago, IL, for Plaintiff.

Rachel Brill, Carlos Del–Valle–Cruz, Maria Eugenia Villares–Seneriz, Department of Justice, Francisco A. Ojeda–Diez,

## OPINION AND ORDER

LAFFITTE, District Judge.

This matter is before the Court for review of the Report and Recommendation entered by United States Magistrate Judge Gelpi, wherein he recommended that Plaintiff Norman T. Olson's motion for preliminary injunction be denied pursuant to the abstention doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[1] Objections to the Report and Recommendation were filed by Plaintiff Olson,[2] the Commonwealth of Puerto Rico law enforcement Defendants,[3] and Defendant Marta Santos.[4]

## STANDARD OF REVIEW

A district court, may on its own initiative, refer a pending matter to a United States magistrate judge for a report and recommendation. Fed.R.Civ.P. 72(b); D.P.R. R. 72. Under Rule 72(b) of the Federal Rules of Civil Procedure, the Court is obligated to make a "de novo determination ... of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." Fed.R.Civ.P. 72(b). The Court thereafter "may accept,

---

1. Docket no. 83.

2. Docket nos. 89, 95.

3. Docket no. 91. The Commonwealth law enforcement defendants are: Roberto Sán-chez Ramos, Alberto Valcárcel Ruiz, Arístides Cales Fraticcelli, Sergio Rubio, and Pedro Gerónimo Goyco Amador.

4. Docket no. 92.

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1 (1st Cir.1999) (quoting 28 U.S.C. § 636(b)(1)(C)). In accordance with the mandate set forth in 28 U.S.C. § 636(b), the Court has reviewed the Report and Recommendation, the parties' objections to said report, and the record as a whole. Based upon this de novo review, the Court concludes that the magistrate judge's Report and Recommendation should be **approved** and **adopted** in its entirety. Accordingly, Plaintiff Olson's motion for a preliminary injunction is **denied**.

### DISCUSSION [5]

 It is well established that, in the interest of comity and federalism, federal courts may not enjoin pending state court criminal proceedings except under exceedingly rare and extraordinary circumstances. *Younger,* 401 U.S. at 41, 91 S.Ct. 746; *Esso Standard Oil Co. v. Cotto,* 389 F.3d 212, 217 (1st Cir.2004); *SMA Life Assur. Co. v. Sanchez–Pica,* 960 F.2d 274, 277 (1st Cir.1992); *Iglecia v. Serrano,* 882 F.Supp. 26, 28 (D.P.R.1995). Federalism is "a system in which there is a sensitivity to the legitimate interests of both State and National Governments, and which the National Government, anxious though it may be to vindicate federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger,* 401 U.S. at 44, 91 S.Ct. 746. "Under our federalist system, 'the balance of power between federal and state courts is delicate, and federal courts must tread with care whenever they are asked to intervene in pending state actions.'" *Rivera–Schatz,* 310 F.Supp.2d 405, 409

(D.P.R.2004)(citing *Smith v. Gribertz,* 887 F.Supp. 583, 586 (S.D.N.Y.1995)). In determining if abstention from enjoining an ongoing state criminal proceeding is appropriate, the Court must consider whether: (1) there are ongoing state proceedings; (2) the proceedings implicate important state interests; and (3) the proceedings afford plaintiff an adequate opportunity to present his federal claims. *Brooks v. New Hampshire Supreme Court,* 80 F.3d 633, 638 (1st Cir.1996)(citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).

 In the present case, the first prerequisite for *Younger* abstention is clearly satisfied since it is undisputed that Plaintiff Olson is currently being prosecuted for alleged offer of bribery in violation of Article 212 of the Commonwealth of Puerto Rico Penal Code, 33 L.P.R.A. § 4363. The second requirement is met, since the Commonwealth has a legitimate interest in enforcing its laws concerning alleged offers of bribery of state officers. The final *Younger* abstention prerequisite is also satisfied because the pending state proceeding affords Olson an adequate opportunity to raise his federal claims and issues. An "adequate opportunity" to present federal claims requires only that state law does not "clearly bar[ ] the interposition of the constitutional claims." *Brooks,* 80 F.3d at 639 (quoting *Moore v. Sims,* 442 U.S. 415, 425–26, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)). The notion of "Our federalism" and comity precludes "any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee,* 457 U.S. at 431, 102 S.Ct. 2515 (emphasis in original); *Gibson v. Berryhill,* 411 U.S.

---

**5.** The factual background set forth in the magistrate judge's Report and Recommendation is adequate and need not be reiterated here. *See* Docket no. 83, at 3–5.

564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (The *Younger* abstention doctrine "naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved."). In the instant case not only is there no indication that Olson will be barred or otherwise restricted from raising his constitutional claims, but the record shows that Olson has already raised some of the same constitutional challenges articulated in the present civil rights action before the Puerto Rico Court of Appeals and Supreme Court of Puerto Rico. *See* docket nos. 83 at p. 9, 78 at p. 34. As such, the Court concludes that the commonwealth proceedings afford Olson an adequate opportunity to present his federal constitutional claims.

Where, as here, the *Younger* prerequisites are satisfied, "a federal court may nonetheless intervene to halt an ongoing state judicial proceeding if the plaintiff demonstrates 'bad faith, harassment, or any other unusual circumstance.'" *Brooks,* 80 F.3d at 639 (quoting *Younger,* 401 U.S. at 54). In the present case, Olson asserts that he is being selectively prosecuted, and that the prosecution is politically motivated and based on the knowing use of false testimony in violation of due process. Olson argues that this constitutes a bad faith and harassing prosecution sufficient to invoke an exception to the *Younger* abstention doctrine. "In determining whether a prosecution is commenced in bad faith or to harass, courts have typically considered three factors: '(1) whether [the prosecution] is frivolous or undertaken with no reasonable objective hope of success . . .; (2) whether [the prosecution is] motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights . . .; and (3) whether [the prosecution is] conducted in such a way as to constitute harassment

and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Rivera–Schatz,* 310 F.Supp.2d at 410 (citing *Phelps v. Hamilton,* 59 F.3d 1058, 1065 (10th Cir.1995)).

Plaintiff Olson raises compelling and serious allegations of constitutional rights violations and prosecutorial impropriety. However, Olson has failed to proffer sufficient evidence for the Court to conclude that the commonwealth prosecution against Olson is commenced in such bad faith or harassment as to permit intervention by this Court. The pending commonwealth prosecution of Olson does not appear to have been undertaken without reasonable objective hope of success. Olson is charged with an alleged violation of Article 212 of the Puerto Rico Penal Code which provides that "Every person who directly or through an intermediary gives or promises to a public officer or employee, juror or arbitrator or to any other person authorized by law to hear or decide upon any matter or controversy, or to a witness, money or any benefit for the purpose provided in §§ 4360–4362 of this title, shall be punishable by the imprisonment term provided in the corresponding section." 33 L.P.R.A. § 4363. The phrase "purpose provided in §§ 4360–4362" is defined as "executing a regular act of his office or function." 33 L.P.R.A. § 4360. The record shows that for fear of losing his business contracts with the Commonwealth, Olson gave money to Victor Fajardo, the former Secretary of Education for the Commonwealth of Puerto Rico, for the purpose of maintaining his business contracts with the Commonwealth Department of Education. It is undisputed that one of Victor Fajardo's regular acts of his office or function as Secretary of Education was entering into and maintaining contracts on behalf of the Department of Education.

■ The fact that during a related federal criminal proceeding, *United States v. Fajardo–Velez,* Civil No. 02–042(HL) (D.P.R.), Fajardo was untruthful when he stated that the payment made to him by Olson in return for contracts were made voluntarily and that this Court ultimately found Olson to be a victim of extortion,[6] do not indicate that the Commonwealth's criminal case against Olson for offer of bribery was undertaken without any reasonable objective hope of success. It appears from the record that, in the commonwealth courts, Olson has raised the claims that extortion victims cannot be charged with offer of bribery for the same underlying transaction and that Article 212 contains a specific intent—rather than a general intent—*mens rea.* It is also evident from the record that the commonwealth courts have rejected these arguments.[7] As discussed in the Report and Recommendation, federal courts must defer to state courts' interpretation of state penal statutes. *See* docket no. 83 at 12–13. The commonwealth courts have specifically made a finding that probable cause exists to try Olson for offer of bribery.

In respect to the second inquiry—whether the commonwealth prosecution is motivated by Plaintiff's suspect class or in retaliation for Plaintiff's exercise of constitutional rights—the Court must answer in the negative. Olson asserts that there is a political motive behind his prosecution because he is a member of the New Progressive Party (NPP) while another contractor implicated in the Victor Fajardo extortion case, Jesús Emilio Rivera Class—a member of the Popular Democratic Party (PDP)—was provided total immunity from prosecution by the Commonwealth's Attorney General. The fact that another contractor who happens to be a member of the PDP was granted a controversial immunity is, unfortunately, not sufficient for *Younger* abstention purposes. After thoroughly reviewing the record, the Court must agree with the magistrate judge's conclusion that Olson has not presented sufficient evidence of an impermissible or political motive behind his commonwealth prosecution so as to avoid *Younger* abstention.

■ As to the third and final element of a claim bad faith or harassing prosecution—whether the prosecution is conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions—the evidence in the record does not permit the Court to conclude that this single commonwealth prosecution against Olson has been or threatens to be conducted in such a way as to constitute harassment or an abuse of prosecutorial discretion for *Younger* doctrine purposes. A plaintiff has a heavy burden in overcoming the bar of *Younger* abstention and must set forth more than allegations of bad faith or harassment. *Phelps,* 122 F.3d at 889–90. Olson's allegations of bad faith and harassment are not adequately substantiated by evidence in the record. Thus, Olson has failed to satisfy his weighty burden.

■ "[A] federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." *Samuels v. Mackell,* 401 U.S. at 69, 91 S.Ct. 764. In the case at bar, the only injury Olson has shown is the hardship of defending against the singular

---

6. *See United States v. Cruz–Mercado,* 360 F.3d 30, 37–39 (1st Cir.2004).

7. *See* docket no. 83, at p. 12.

criminal prosecution pending in the commonwealth courts. "[T]he cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, [cannot] by themselves be considered 'irreparable' in the special legal sense of the that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Younger*, 401 U.S. at 46, 91 S.Ct. 746. Here, each alleged threat to Olson's federally protected rights could be raised and, if the claims are meritorious, eliminated by his defense of the pending criminal prosecution.

In sum, although there may be merit to Olson's serious allegations of political discrimination and selective prosecution, fundamental principles of equity, comity, and federalism preclude this Court from enjoining Olson's ongoing commonwealth criminal proceeding.

## CONCLUSION

For the aforementioned reasons, the Court hereby **ADOPTS** and **APPROVES** Magistrate Judge Gelpi's Report and Recommendation, recommending that Plaintiff Olson's motion for preliminary injunction be denied pursuant to the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. Accordingly, Plaintiff Olson's motion for a preliminary injunction is hereby **DENIED**.[8] Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

8. "When *Younger* applies, the district court must refrain from reaching the merits of the plaintiff's claims and, thus, there is no real possibility—let alone a likelihood—that the plaintiff will succeed in his action. A fortiori, there can be no abuse of discretion in refusing to grant preliminary injunctive relief." *Brooks*, 80 F.3d at 637.

## REPORT AND RECOMMENDATION

GELPI, United States Magistrate Judge.

### I. *Introduction*

Plaintiff Norman T. Olson brings this Section 1983 suit seeking a preliminary injunction to abort his pending criminal prosecution before the Commonwealth Court of First Instance, the trial set to commence on October 17, 2005. In his complaint (Docket No. 1), he alleges that the former Attorney General of the Commonwealth of PuertoRico, Anabelle Rodríguez Rodríguez,[1] along with her then Chief Deputy and now General Prosecutor, Pedro G. Goyco Amador, and several prosecutors of the Department of Justice, Sergio Rubio, Alberto Valcárcel and Arístides Cales Fraticelli, initiated a bad faith prosecution against him, following the dismissal of the federal criminal case in which he was accused. Olson further alleges that three defendant-cooperating witnesses from the federal case, Víctor Fajardo, José Omar Cruz, and Marta Santos, are witnesses for the prosecution in the Commonwealth criminal proceeding.[2] Plaintiff posits that, notwithstanding the federal court's findings in the federal criminal case that two of these federal government defendant-cooperators testified falsely, the Commonwealth Attorney General and prosecutors filed charges against him which are inconsistent with and ignore completely the federal court's determinations.

1. Rodríguez's successor, Roberto Sánchez Ramos, is also included as a defendant in this action.

2. Plaintiff has included as defendants in this action all the aforementioned Puerto Rico Department of Justice officials, as well as the three purported cooperating witnesses.

Plaintiff Olson further contends that his pending bad faith prosecution in Commonwealth court is politically motivated. He alleges that contractors such as him, who did business with the Department of Education during the last New Progressive Party (NPP) administration, have been prosecuted. Contrarywise, Jesús Emilio Rivera Class, another contractor who had significant ties to the Popular Democratic Party (PDP) administration which appointed defendants, was questionably provided total immunity from prosecution by the Attorney General.

Recognizing that the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), bars federal courts from enjoining ongoing state criminal proceedings, absent exceptional circumstances, Olson contends that the latter is the case here. He, thus, invokes the *Younger* "bad faith" exception. *See Dombrowski v. Pfister,* 380 U.S. 479, 489–490, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (recognizing bad faith exception to federal court abstention); *Brooks v. New Hampshire Supreme Court,* 80 F.3d 633, 639 (1st Cir. 1996) (holding that though *Younger* requirements for abstention are satisfied, a federal court may nonetheless intervene to stop ongoing state judicial proceeding if the plaintiff demonstrates "bad faith, harassment or any other unusual circumstance"); *see also Shaw v. Garrison,* 467 F.2d 113 (5th Cir.1972) (finding that state

prosecution brought in bad faith was properly enjoined).

On September 12–13, 2005, the Court held a show cause hearing in which the parties presented their arguments as to whether the *Younger* bad faith exception warranted the relief sought by plaintiff. While the parties also submitted extensive documentary evidence, neither side presented any witness.[3] The Court did call one witness, as will be discussed at Section III–E, *infra.* In addition, the plaintiff filed a Memorandum of Law in support of his motion for preliminary injunction (Docket No. 39) and defendants filed a Motion to Dismiss and in Opposition to Plaintiff's Motion (Docket No. 55).[4] The Court, following the show cause hearing granted the parties additional time to file simultaneous summation briefs, which they did (Docket Nos. 77, 78 and 81).

## II. *Factual Background* [5]

Plaintiff Olson is the owner and founder of National School Services of Puerto Rico (NSSPR), an Illinois corporation which provided numerous goods and services to the Puerto Rico Department of Education throughout the 1990s until 2002. In January, 2002, a grand jury in the District of Puerto Rico indicted the former Commonwealth's Secretary of Education from 1994 to 2000, Víctor Fajardo, and sixteen other co-defendants in an eight count indictment

---

**3.** Plaintiff, prior to the hearing sought two emergency petitions for writ of *habeas corpus ad testificandum* to have defendants Fajardo and Cruz appear at the show cause hearing. *See* Docket Nos. 26 and 27. Both motions identically state at ¶ 5 that Cruz and Fajardo are parties to this litigation and *may* be a material witness to issues addressed at the show cause hearing. The Court denied both motions without prejudice (Docket No. 28) as no compelling necessity for the writs was adduced by plaintiff at the time. During the show cause hearing, plaintiff's counsel did not renew the *habeas* requests. More so,

when asked if plaintiff would call any witness, his counsel responded in the negative.

**4.** Only those arguments raised by defendants concerning the *Younger* bad faith issue are addressed in this report.

**5.** These facts are in part reported in the First Circuit's opinion pertaining to the appeals filed by defendants Fajardo and Cruz. *See United States v. Cruz–Mercado,* 360 F.3d 30 (1st Cir.2004).

charging that Olson and other Department of Education contractors conspired and paid Fajardo and his Associate Secretary, José Omar Cruz, kickbacks under economic fear in excess of $4.3 million in return for their contracts. Defendants were also charged with money laundering.

Both Fajardo and Cruz entered into plea and cooperation agreements with the federal government. They testified before the federal grand jury and provided considerable information to federal law enforcement authorities about their own delictive activities and those of others involved in the scheme. In September, 2002, the federal trial of Olson and others commenced. Fajardo was called by the Government as the first witness. On the fifth day of his testimony, as he was being cross-examined, the federal prosecutor accused Fajardo of perjury and moved to revoke his bond. The prosecutor also moved to dismiss the criminal case against Olson and other defendants with prejudice. The district court granted the motion to dismiss and subsequently revoked Fajardo's bond.

During the federal trial, Fajardo initially testified that Olson and other contractors paid voluntary donations to the NPP in return for their contracts. However, during cross-examination, he admitted that he and Cruz threatened the contractors with economic death if they refused to pay kickbacks. During Fajardo's bail revocation hearing the prosecutor informed the Court that, had Fajardo told the Government about his economic death threats, Olson and the other contractors would likely not have been indicted.

At Fajardo's sentencing, the Court made a finding that Fajardo extorted money from the contractors, which included Olson. See Fajardo's Sentencing Transcript in Criminal Case 02–42(HL) at pages 27–29. Based on this finding, as well as other instances of providing false information to the prosecution during its investigation, the Court rejected Fajardo's plea agreement and sentenced him to twelve years and seven months incarceration—roughly the double of his expected sentence under the plea agreement.

During Cruz's sentencing, also on the same day as that of Fajardo, the Court also made findings that he obstructed justice during the federal criminal proceeding, and played the role of enforcer by threatening the contractors with economic death. See Order of 1/21/03 (Docket No. 607) in Criminal Case No. 02–42(HL).

Subsequent to the sentencing of Fajardo and Cruz, Marta Santos, NSSPR's former executive director, who had entered a guilty plea, moved to withdraw the same. The federal Court, upon the government's concession as to said relief, granted the motion, and charges against Santos were also dismissed with prejudice.

In 2003, new charges were filed against Olson and several of the other former federal defendants, this time by Commonwealth law enforcement authorities. Pursuant to Section 212 of the Puerto Rico Penal Code, Olson was charged with four counts of bribery. Each charge describes the payments made to Fajardo as being voluntary. These payments are based on some of the same payments that formed the basis for the federal criminal proceedings against Olson.

In 2004 a preliminary hearing was held before the Commonwealth Court of First Instance. Cruz, who entered into a plea and cooperation agreement with the Commonwealth, testified about the payments made by Olson and others. Marta Santos, who received an immunity agreement from the Commonwealth, also testified about these payments. Probable cause was found as to the four charges.

After the preliminary hearing, Olson argued to the local court in a motion to dismiss filed pursuant to P.R. R.Crim. P. 64(p) that it should defer to the federal court's findings pertaining to the involuntariness of the payments, and thus dismiss the charges. The Court rejected the argument. Two interlocutory appeals to the Commonwealth Circuit Court of Appeals and Supreme Court, respectively, were filed, and the argument was again rejected *sub silentio* by both Courts.

Subsequently, plaintiff filed the federal action now before this Court.

### III. *Discussion*

In the case at bar Olson does not question the applicability of the *Younger* abstention doctrine. He does, however, invoke its "bad faith" exception. *See generally Brooks,* 80 F.3d at 639; *Rivera–Schatz v. Rodríguez,* 310 F.Supp.2d 405, 410–411 (D.P.R.2004). His bad faith argument is two-fold. First, he contends that, because of the federal court's findings, defendants are collaterally estopped for prosecuting him before the Commonwealth court. Although Olson recognizes that the governments of the Commonwealth of Puerto Rico and the United States are two separate sovereigns, he claims that the Due Process Clause of Article V to the Constitution, made applicable to the states by the Fourteenth Amendment, bars the Commonwealth government from further prosecuting him. As Olson himself puts it, defendants cannot prosecute him "based on a story they know is false".

Olson's second argument is that defendants' bad faith is politically motivated, as the PDP contractor involved in the federal case, Jesús Emilio Rivera Class, was given total immunity at the Commonwealth level. Olson also raises an additional claim for declaratory relief concerning the Puerto Rico bribery statute. He argues that the court in the Commonwealth criminal proceeding has construed the statute as one requiring general intent. He asks this Court to declare as a matter of federal law that the same should be interpreted to require specific intent and that extortion is complete defense to the charges brought against him. The Court shall address Olson's arguments *seriatim.*

### A. *The Dual Sovereign Doctrine and Due Process*

■ It is a bedrock principle of constitutional law that two separate sovereigns within our National Government can bring successive prosecutions for the same criminal acts without offending the Due Process of Law. *See Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (holding that Fourteenth Amendment Due Process right of defendant acquitted in federal court of robbery of federally insured savings and loan association was not violated by subsequent state prosecution based on same acts); *see also Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (holding that successive prosecutions by another State for the same criminal conduct was not barred by the Double Jeopardy Clause); *United States v. Angleton,* 314 F.3d 767 (5th Cir.2002) (holding that state court acquittal of defendant for capital murder did not preclude subsequent federal prosecution for murder for hire, and recognizing that under *Bartkus* due process is not offended).

■ The Commonwealth of Puerto Rico is considered a separate sovereign for successive prosecution purposes due to Congress' delegation of powers to the territory's government. *See United States v. López Andino,* 831 F.2d 1164, 1167–1168 (1st cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988) (allowing federal conviction to stand, de-

spite prior state conviction arising from same criminal conduct); *see also United States v. Lara,* 541 U.S. 193, 204, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004) (noting that sovereignty of Commonwealth of Puerto Rico, a United States territory, is the result of Congressional delegation).

In view of the aforementioned applicable precedent, Olson's Due Process claim flatly fails.

## B. The Dual Sovereign Doctrine and Collateral Estoppel

■■■■■ The doctrine of collateral estoppel, also known as issue preclusion, generally prohibits relitigation between same parties of an issue of ultimate fact that has been determined by a valid and final judgment. *See Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). An unsuccessful criminal prosecution by a state or the federal government, however, will not collaterally estop the other sovereign from prosecuting an individual based on the same conduct, even when the state and federal offenses mirror each other. *See United States v. Angleton,* 314 F.3d 767, 776 (5th Cir.2002) (noting that in *Ashe* the Court held that collateral estoppel is embodied in the Double Jeopardy Clause, and holding that federal government was not collaterally estopped from prosecuting defendant for same conduct following unsuccessful state prosecution); *United States v. Ricks,* 882 F.2d 885, 889–890 (4th Cir.1989) (holding that collateral estoppel did not bar federal prosecution following defendant's acquittal in State of Maryland prosecution); *Garrison v. State,* 2005 WL 1594258 * 4–5 (Tex. App.2005) (holding that collateral estoppel did not bar subsequent state prosecution, where federal indictment was dismissed

following request by federal prosecutor); *State v. Mechtel,* 499 N.W.2d 662, 664–667,176 Wis.2d 87, 91–98 (1993) (holding that collateral estoppel did not bar subsequent state evidentiary hearing under *Franks v. Delaware,*[6] following a federal magistrate judge's determination that testimony at probable cause hearing contained intentional or reckless false statements or omissions which were material; although federal charges were dismissed upon motion by the U.S. Attorney, the State was not bound by said determinations).

In the case at bar, the collateral estoppel doctrine likewise does not preclude the Commonwealth Attorney General and prosecutors from charging Olson. Nor does it compel the local courts to accept the federal court's findings in Criminal Case 02–42(HL), *no matter how factually correct and persuasive these may be.* Hence, the federal court's findings at bail revocation and sentencing hearings, as well as in Santos' plea withdrawal, that Fajardo and Cruz had extorted Olson and other contractors, cannot legally bind the Commonwealth of Puerto Rico, which is a separate sovereign.

## C. Collateral Estoppel and Privity

In a gargantuan effort to maintain alive the collateral estoppel doctrine, Olson claims that the Commonwealth Attorney General and prosecutors are in privity with co-defendants Fajardo, Cruz and Santos. As such, the federal court's findings as to extortion made in relation to these defendants in criminal case 02–42(HL) do bind the Commonwealth. To support his privity argument, Olson sustains that, because Fajardo, Cruz and Santos entered into plea agreements with the Common-

---

6. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (allowing evidentiary hearings to determine whether affiant to search warrant affidavit knowingly and falsely represented crucial material facts).

wealth Government for purposes of the local prosecution, the Attorney General and prosecutors are in privity with them. *See* Olson's *Memorandum of Law* (Docket No. 39) at page 32. He also alleges, but presented no evidence in support, that representatives of the Attorney General were present in the federal courtroom during the times the findings as to extortion were made. *Id.* Further, he notes that the Attorney General and prosecutors requested and received information from the federal criminal proceeding. *Id.* Finally, Olson contends that the Attorney General and prosecutors convinced Fajardo, Cruz and Santos to change their testimony before the Commonwealth Court. *Id.* at 33.

For a non-party, such as the Attorney General and prosecutors, to be in privity with a party to a criminal action, such as Fajardo, Cruz and Santos, the non-party must substantially control or be represented by the party so that the doctrine of collateral estoppel apply. *See United States v. Bonilla Romero*, 836 F.2d 39, 43 (1st Cir.1987); *see also United States v. Pérez Pérez*, 72 F.3d 224, 226 (1st Cir.1995). Where prosecutors from a state or federal jurisdiction are neither a party nor in privity with their counterparts in the other jurisdiction's proceedings, such requirement is not satisfied. *Bonilla Romero*, 836 F.2d at 43–44.

Whether non-party privity lies in a given case is a fact-specific question. *Bonilla Romero*, *supra* at 43. For example, in *Bonilla Romero*, the Court noted that the defendant "present[ed] no evidence whatsoever that federal prosecutors were, or should have been, involved in any way in the local prosecution. There is no

indication they provided assistance or advice to the local authorities or at any time even discussed the matter". 836 F.2d at 44. Likewise, in *State v. Mechtel*, 499 N.W.2d at 667, 176 Wis.2d at 96–97, the Court noted that "There is no evidence that the state controlled the federal prosecution. There was no evidence that the state was represented by the federal prosecutor".

In the case at bar, there is no evidence of record whatsoever to the effect that Commonwealth authorities procured, initiated, assisted or oversaw the federal criminal prosecution. Nor is there evidence that the federal prosecutor was *de facto* representing the Commonwealth during the federal proceeding. *E.g.*, *Mechtel*, *supra*. The mere fact that Commonwealth prosecutors may at times have been present in federal court as part of the public is, in and of itself, insufficient to even suggest any type of Commonwealth control or influence over the federal prosecution.

The fact that José Omar Cruz and Marta Santos testified for the Commonwealth at Olson's preliminary hearing which resulted in a finding of probable cause, and have respectively received cooperation and immunity agreements, is also insufficient to establish privity.[7] More so, *no convincing evidence was presented by Olson to the Court to sustain his allegations that Cruz and Santos conspired with the Attorney General and prosecutors, thereby agreeing to present false testimony in stark contradiction of the federal court's findings as to extortion.* The Court has carefully reviewed these two witnesses' testimony before the Court of First Instance from the preliminary hearing transcripts and finds

---

7. In response to Olson's allegation that Fajardo entered into a plea and cooperation agreement with the Commonwealth and would be a witness at trial, counsel for the Attorney General and prosecutors represented to the Court at the show cause hearing that Fajardo did not have a cooperation and/or immunity agreement, nor would be called at trial as a witness during the Commonwealth's case in chief.

from the same that no concrete evidence of a conspiracy to change testimony can even be inferred. The fact that the testimony of Cruz and Santos differs to and/or contradicts the federal court's findings, if at all, may strongly bear on the weight of the prosecution's evidence at trial, but is not *per se* evidence of a conspiracy as plaintiff contends.

## D. *Judicial Bias by the Commonwealth Judiciary*

In his complaint at ¶¶ 124 and 125, Olson launches a massive strike against the integrity of the Commonwealth's judiciary to sustain his argument that defendants' constitutionally prohibited conduct has been permitted to continue as the Commonwealth Court of First Instance, Circuit Court of Appeals, and Supreme Court, have not dismissed the bribery charges filed against him based on the federal court findings.[8] This same argument has previously been rejected by the Supreme Court within the *Younger* context. *See Huffman v. Pursue, Ltd.* 420 U.S. 592, 610, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (explaining that Article VI of the Unites States Constitution declares that "the Judges in every state shall be bound" by the Federal Constitution, laws and treaties, and declining to formulate a rule on the assumption that state judges will not be faithful to their constitutional responsibilities); *see also Jou v. Chang,* 350 F.Supp.2d. 862, 869 (D.Hawai'i 2004) (same holding). In the present case, aside from plaintiff's allegations, no evidence of record demonstrates the sort of judicial bias claimed by him. Any inconsistent ruling by the Commonwealth Courts to that of the federal Court is, hence, insufficient to overcome *Younger.*

## E. *The Rivera Class Immunity: Evidence of Political Animus to Sustain the Claim of Bad Faith*

Olson charges that Attorney General Rodríguez granted Jesús Emilio Rivera Class[9] immunity because he was associated to the PDP, and just after one afternoon's interview with her. Olson notes that at Fajardo's sentencing hearing the federal court questioned the granting of said immunity:

> Also, he, Mr. Fajardo, took 1.4 million in cash from Emilio Rivera Class, and the testimony of the Grand Jury of Omar Cruz, that the one who made more cash was Emilio Rivera Class.

> Unfortunately, he, being one of the most culpable of the three, Fajardo, Omar and Rivera Class, got total immunity. I don't know how or why. That should be explained publicly; not in this jurisdiction, the local jurisdiction. This was after giving information only on an afternoon. He was not even given a plea agreement; just an immunity.

At the show cause hearing the Court inquired of plaintiff's counsel what evidence of record demonstrated that Rivera Class was affiliated to the PDP. None was pinpointed. The Court nonetheless noted that in a motion to dismiss the indictment in Criminal Case No. 02–42(HL) based on selective prosecution (Docket No. 362) Rivera Class asserted he was a PDP member who was singled out by the

---

8. No particular Commonwealth judge or judges are named defendants in the present action, nor are mentioned in the complaint as being part of defendants' conspiracy. Defendant Anabelle Rodríguez Rodríguez is presently an Associate Justice of the Puerto Rico Supreme Court, however, recused herself from participating in the decision to deny Olson's *certiorari* petition.

9. Rivera Class was also a defendant in the federal criminal case whose charges were dismissed.

federal government based on his political affiliation. Notwithstanding, Olson has not presented any evidence to this Court, either direct or circumstantial, to the effect that the Attorney General and prosecutors knew Rivera Class personally, and further knew of his political affiliation at the time of granting the immunity. This is fatal to a Section 1983 claim based on impermissible political motivation. *Compare with, e.g., González–De–Blasini v. Family Dept.*, 377 F.3d 81, 85–86 (1st Cir. 2004) (holding that claim that defendants were aware of plaintiff's political affiliation because she was a well-known NPP supporter in the community and held a trust position with the NPP administration was legally insufficient, to establish that defendants were aware of her affiliation; plaintiff failed to adduce any evidence that defendants knew her party affiliation).

Notwithstanding the above, based on the lack of any information as to Rivera Class' immunity, the Court ordered that his immunity agreement and accompanying documents be produced to the Court. The Attorney General complied, thus, providing the immunity agreement as well as an accompanying sworn statement, which the Court made part of the record in this case. This agreement dated December 18, 2001, is signed by Rivera Class, his counsel Harry Anduze Montaño, and Assistant prosecutor Felix Fumero Pugliessi, the then director of the Commonwealth Department of Justice's Public Integrity Division. Attorney General Rodríguez was not a signator to the same.

Attorney Fumero was called by the Court as a witness to testify about the circumstances surrounding the execution of the immunity agreement.[10] He testified the following:

1. He served as a prosecutor at the Department of Justice for nearly thirty years. He was appointed to office by three different governors, two of them from the NPP and one from the PDP. During the past PDP administration the Attorney General appointed him to the position of Director of the Public Integrity Division, which he occupied until his retirement in September, 2002.

2. Approximately one week prior to December 18, 2001, Attorney General Rodríguez spoke to Fumero over the telephone and informed him that the attorney of an individual who was interested in providing information regarding the Fajardo investigation would be contacting him. At this time, Rodríguez did not inform Fumero of the name of the witness nor of his counsel.

3. That same day, attorney Harry Anduze Montaño called Fumero. Both agreed to meet for an offer of proof. At this time Fumero was still unaware of the identity of Anduze's client.

4. Two to three days later, Fumero meet with attorney Anduze. Counsel provided Fumero with copies of several RG Bank Manager's checks which were used in the Fajardo scheme. From these checks Fumero became aware that the witness was Rivera Class. This was the first time Fumero ever heard of Rivera Class.

---

**10.** Prior to the 9/12/05 show cause hearing, plaintiff nor his counsel had never examined said immunity agreement. Because Fumero's participation in the same was previously unbeknownst to plaintiff, the Court decided to make Fumero available for questioning. At the hearing, the Court, rather than conduct itself his examination, permitted counsel for the parties to interrogate attorney Fumero.

5. After further meetings with attorney Anduze and determining that the information Rivera Class provided and could further provide would be useful to prosecute Fajardo, Fumero met with Attorney General Rodríguez in person at her office to discuss the immunity matter. Although he had the authority to determine whether to grant the same or not, he consulted with Rodríguez because of the public importance of the Fajardo case. Fumero's recommendation was that immunity be granted. Rodríguez agreed.

6. On December 18, 2001, Fumero met with Rivera Class and Anduze. After a three hour interview, he proceeded to take a sworn statement from Rivera Class and entered into the immunity agreement with him. Although Fumero at the time was aware of the ongoing federal Fajardo investigation, he did not consult his decision to grant immunity with federal prosecutors.

7. The information provided by Rivera Class was key to the prosecution of Fajardo and others at the Commonwealth level. Most important, it allowed the Commonwealth Government to successfully prosecute Fajardo, who was the most culpable player. At the time Rivera Class was given immunity, he was the first witness who made himself available to cooperate. Two other witnesses were later also given immunity.

11. Plaintiff, in his summation brief (Docket No. 77) at pages 12–19 expounds on these very matters, and presented along with new exhibits to support his theory. He also now questions Fumero's credibility based on said exhibits. Although such matters may indeed be relevant to Olson's bad faith prosecution

Given the uncontradicted testimony of attorney Fumero, as well as the lack of any other evidence of record, highly probative of political motivation or preference as to Rivera Class by the higher echelon of the Department of Justice, the Court can reach but one conclusion in the case before it: *Olson has not presented compelling evidence of an impermissible or political motive behind his Commonwealth prosecution so as to avoid Younger.*

*Again, the Court notes that it provided plaintiff the opportunity to present witnesses at the show cause hearing. Plaintiff at no point called defendant Rodríguez to testify about the circumstances surrounding Rivera Class' immunity. Nor did he call any witness to explain why Rivera Class' immunity has not to date been revoked, given evidence in the federal prosecutor's hands indicative that Rivera Class lied to Fumero at the time he was given immunity.*[11]

### F. Judicial Interpretation of the Puerto Rico Bribery Statute's Mens Rea Requirement

Finally, Olson prays for a declaratory judgment by this Court ruling that under federal constitutional parameters, the Puerto Rico bribery statute be held to be a specific, rather than general, intent penal statute and that extortion is a complete defense to his bribery charges. The Commonwealth courts, thus far, have rejected this argument by Olson.

■ Plaintiff's request is unfounded. Federal courts defer to state courts' interpretation of state penal statutes. *See cf.*

claim, it is highly improper to bring them to the Court's attention at this belated time, when Fumero had been excused, and no further witnesses were called by the parties at the show cause hearing, both sides having rested.

*Brecheisen v. Mondragon,* 833 F.2d 238, 240 (10th Cir.1987) (holding that a federal court in a *habeas corpus* proceeding should defer to a state court's interpretation of a state statute); *Tarrant v. Ponte,* 751 F.2d 459, 465 (1st Cir.1985) (holding that a federal court in a *habeas corpus* proceeding may not disregard the state court's interpretation of state law). In addition, Due Process does not preclude a state or its courts from construing a state statute to provide a particular *mens rea* requirement. *See Montana v. Egelhoff,* 518 U.S. 37, 56, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (holding that States' decision to disallow consideration of a given element in the determination of a state penal statute's *mens rea* does not violate Due Process); *Hoag v. State of New Jersey,* 356 U.S. 464, 467, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958) (holding that nothing in the Due Process Clause prevents state courts from construing the State's penal statutes).

## IV. *Conclusion*

In his complaint, Olson brought forth a colorable, non-frivolous claim of bad faith prosecution. *However, at the show cause hearing he failed to support the same with a strong evidentiary foundation, as is required. See Phelps v. Hamilton,* 122 F.3d 885, 889–890 (10th Cir.1997) (holding that plaintiff has a heavy burden in overcoming bar of *Younger* abstention on bad faith grounds); *Stewart v. Dameron,* 460 F.2d 278, 279 (5th Cir.1972) (same); *Smith v. Gribertz,* 887 F.Supp. 583, 587 (S.D.N.Y. 1995) (same). For the foregoing reasons, the Court concludes that plaintiff's request for a preliminary injunction pursuant to *Younger's* bad faith exception must be **DE-NIED.** "As required by our federalist system of governance [and by the United States Constitution], the Court [must] abstain from enjoining the criminal proceeding against [Olson] [allowing] his defense to be presented before the jury at the [upcoming] trial" *Rivera–Schatz v. Rodríguez,* 310 F.Supp.2d 405, 411 (D.P.R.2004).

The Court hereby advises defendants that the present ruling is strictly based on the evidence presented (*or lack thereof*) in this proceeding, which has been strictly limited to the *Younger* "bad faith" issue. More so, as accepted by defendants at the show cause hearing, Olson is not precluded from raising and further developing any arguments and federal claims brought herein during his criminal trial before the Court of First Instance.

Under the provisions of 28 U.S.C. § 636 and Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court no later than **October 4, 2005.** The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933(1986); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992).

**SO RECOMMENDED.**

Sept. 26, 2005.